735 So.2d 1244 (1997)
David Lee ROBERTS
v.
STATE.
CR-93-1766.
Court of Criminal Appeals of Alabama.
May 23, 1997.
Opinion on Return to Remand March 6, 1998.
Opinion on Second Return to Remand May 8, 1998.
Rehearing Denied June 19, 1998.
*1249 Samuel L. Masdon, Haleyville, for appellant.
Bill Pryor, atty. gen., Robin Blevins, asst. atty. gen., and Rodger Brannum, deputy atty. gen., for appellee.
COBB, Judge.
David Lee Roberts was convicted by a Marion County jury of two counts of capital murder. One count charged that Roberts murdered Annetra Jones during a robbery, a violation of § 13A-5-40(a)(2), Code of Alabama 1975, and one count charged that Roberts murdered Annetra Jones during the commission of an arson, a violation of § 13A-5-40(a)(9), Code of Alabama 1975. The jury recommended that Roberts be sentenced to life imprisonment without parole, but the judge overrode that recommendation and sentenced Roberts to death. Roberts appeals from his convictions and sentence.
Briefly stated, the evidence at trial tended to show the following. Roberts had been a houseguest of Wendell Satterfield. On April 22, 1992, Satterfield's girlfriend, Annetra Jones, was sleeping on a couch in Satterfield's den. Roberts left his job and went to Satterfield's residence around noon on that day. He packed his belongings, stole money from the victim's wallet, and shot her three times in the head with a .22 caliber rifle while she slept. Jones died within seconds. Roberts poured flammable liquid on her body and on the floor in the den, then set fire to a piece of paper he had placed under the couch. In the bedroom in which Roberts had stayed, which was in the basement of Satterfield's house, Roberts set another fire, causing major damage to the room and sending smoke throughout the house. Roberts left the house, taking with him a variety of items, such as the murder weapon and other guns. He hid this evidence, but later led the police to the hiding place.
Law enforcement authorities questioned Roberts and he gave several statements. He admitted shooting Jones and setting Satterfield's house on fire. In his last statement, Roberts said that he had set the house on fire to get back at Satterfield for threatening his parents; he said that he did not know that Jones would be at the house and he did not know why he shot her.
At the sentencing hearing before the jury, the State presented evidence that Roberts had previously been convicted of second degree burglary and first degree theft, and that he had been on parole for less than two months when he committed this crime. Roberts's brother, Terry, and his mother, Brenda, testified that Roberts was nervous, slept poorly, and had a history of drug abuse. Terry Roberts also testified that two days before the murder, Satterfield made what could be construed as a threat against their father.
At the sentence hearing before the court, Roberts testified that he was sorry *1250 about what had happened. He stated that an "older individual" had threatened to kill his parents, that the pressure had built up over time, that he had no one to turn to for help, and that he did what he thought he needed to do at the time. He also testified that the "older individual" told him to burn the house and to shoot Annetra Jones.
After considering the evidence and the jury's sentencing recommendation, the trial court weighed the aggravating and mitigating circumstances and sentenced Roberts to death.
On appeal, Roberts raises 22 issues.
Because this case involves the death penalty, this court is obliged under Rule 45A, Ala.R.App.P., to review the record for any error that may have affected the substantial rights of the appellant. However, in Burton v. State, 651 So.2d 641, 645 (Ala.Cr.App.1993), aff'd, 651 So.2d 659 (Ala.1994), cert. denied, 514 U.S. 1115, 115 S.Ct. 1973, 131 L.Ed.2d 862 (1995), this court noted:
"`[T]he plain-error exception to the contemporaneous-objection rule is to be "used sparingly, solely in those circumstances in which a miscarriage of just would otherwise result."' United States v. Young, 470 U.S. 1, 15, 105 S.Ct. 1038, 1048, 84 L.Ed.2d 1 (1985), quoting United States v. Frady, 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982)."
"Plain error is error which, when examined in the context of the entire case, is so obvious that failure to notice it would seriously affect the fairness, integrity, and public reputation of the judicial proceedings." United States v. Butler, 792 F.2d 1528, 1535 (11th Cir.), cert. denied, 479 U.S. 933, 107 S.Ct. 407, 93 L.Ed.2d 359 (1986).

GUILT PHASE

I.
Roberts argues that the trial court erred when it admitted into evidence photographs showing him, handcuffed, as he gathered for police items that would be used as evidence of the crimes. He alleges that, because he was handcuffed in the photographs, the photographs destroyed the presumption of innocence. He also alleges that the photographs had no probative value. At trial, Roberts objected only on grounds that the photographs removed the presumption of innocence; therefore, the argument regarding the photographs' lack of probative value must be reviewed for plain error.
The State offered into evidence three photographs of Roberts: Exhibits 64 and 65 depict Roberts touching the butt of a rifle that is partially hidden in some leaves covering the ground; Exhibit 68 depicts Roberts standing in a wooded area. Roberts is handcuffed in each photograph. The trial court sustained the objection to Exhibit 68, and admitted the two photographs showing Roberts and the gun.
The admissibility of photographs showing a defendant handcuffed appears to be an issue of first impression in Alabama. However, several other states have rejected defendants' claims that such photographs were prejudicial because the photographs indicated that the defendants were dangerous and guilty. In Wiley v. State, 449 So.2d 756, 760 (Miss.1984), the defendant, handcuffed and in chains, led police to where he had discarded a money bag. He was photographed as he pointed to the bag, and that photograph was admitted into evidence at his trial. The appellate court stated that the photograph showed no more than the testimony indicated, and that it had probative value in that it corroborated the defendant's confession and showed his cooperation with law enforcement authorities. In State v. Barton, 335 N.C. 696, 710-11, 441 S.E.2d 295, 302-03 (1994), the court upheld the admission into evidence of two photographs of the defendant in handcuffs, one of which depicted him standing next to a sheriff's deputy in the area where the victim's car was located. The court noted that the trial court *1251 found that the photographs would assist law enforcement officers in their testimony regarding the defendant's locating evidence from the crime. The jury in that case was instructed that the fact that the defendant was in handcuffs was not evidence of his guilt. In Bryant v. State, 705 S.W.2d 745, 749 (Tex.App.1986), a photograph of the defendant who was being detained by two police officers next to their patrol car was properly admitted, the court held, because it corroborated the officers' testimony about the defendant's appearance when he was arrested. United States v. Mohammed, 27 F.3d 815, 818, 822 (2d Cir.) cert. denied, 513 U.S. 975, 115 S.Ct. 451, 130 L.Ed.2d 360 (1994), is analogous to this case. A photograph of the defendant standing next to a jail cell and wearing a black jacket and a close-up photograph of him were admitted, and the court rejected the claim that the photographs placed "an imprimatur of criminality" upon him. The court held that the photographs corroborated the police officer's testimony, that Mohammed was wearing a black jacket when he was arrested, and that they did not improperly expose the jury to evidence of the defendant's prior record because they were taken at the time of his arrest for the present offense. Clearly, other jurisdictions have allowed the admission into evidence of photographs showing a defendant in custody or otherwise detained.
Although we have not previously addressed this precise issue, our position on the admissibility of photographs is well established. The admission into evidence of photographs is within the trial court's sound discretion, and review of a court's decision on that issue is confined to whether that discretion was abused. See Ex parte Siebert, 555 So.2d 780 (Ala.1989), cert. denied, 497 U.S. 1032, 110 S.Ct. 3297, 111 L.Ed.2d 806 (1990). Photographs are admissible if they tend to illustrate some relevant fact or evidence, or if they corroborate other evidence. See Stanton v. State, 648 So.2d 638, 642 (Ala.Cr.App. 1994). Photographs are admissible even if they are cumulative or demonstrative of undisputed facts. Id.
Investigator C.J. Cox testified without objection that after Roberts was taken into custody, Roberts directed him and a law enforcement officer to the place in the woods where he had hidden the guns (State's Exhibit 49 and State's Exhibit 41) beneath some leaves. He also testified without objection that he photographed Roberts as he retrieved the guns, and he identified State's Exhibits 64 and 65 as those photographs.
Sergeant Ken Mays, an officer with the Department of Public Safety, testified about his interviews with Roberts, and read the statements Roberts had given during those interviews to the jury. In his final statement, Roberts admitted that he had shot the victim and had hidden the guns; he could not describe the hiding place in the woods "because there ain't no directions on how to get there." Sgt. Mays testified that after Roberts made this statement, he was placed in custody. Sgt. Mays also testified that Roberts took him and C.J. Cox to where he had hidden the weapons.
The photographs simply illustrate the testimony, which was not objected to, and they are probative because they corroborate Roberts's statement. The officers testified that Roberts was in custody, so the fact that he was handcuffed as he retrieved the weapons was not unexpected. Finally, we find it significant that the trial court exercised its discretion and sustained Roberts's objection to State's Exhibit 68, which was a photograph of him standing handcuffed in a wooded area, without any of the stolen weapons or other evidence in the photograph. The trial court's decision to admit the two photographs depicting Roberts retrieving the weapons was a proper exercise of its discretion. We find no error.

*1252 II.
Roberts argues that the trial court erred because it failed to define intent in its jury charge. Roberts failed to object on this basis at trial, so we review this issue now under the plain error rule.
The trial court instructed the jury that the statute defining murder requires proof that the accused caused the death of another person, and that in performing the act or acts that caused the death, the accused intended to kill the deceased. The court further charged the jury that to sustain the robbery-murder charge, the State had to prove beyond a reasonable doubt that Roberts committed or attempted to commit a robbery, that Jones had been killed, that Roberts caused her death, and that in committing the acts that caused Jones's death, Roberts acted with intent. The court also instructed the jury that arson-murder required proof that Roberts intended to kill Jones during the course of the arson, and that arson required intentional damage to the building. After the initial charge, the trial court stated to the jurors that if any part of the charge was unclear or if they did not understand any part of the charge they could request clarification or further instructions. The jury did not request additional instructions.
A trial court has broad discretion in formulating its jury charge, so long as the instructions accurately reflect the law and relevant facts. When reviewing a claim of error in a jury instruction, the jury charge must be construed as a whole and the language must be construed reasonably. See Carroll v. State, 599 So.2d 1253, 1270 (Ala.Cr.App.1992), aff'd, 627 So.2d 874 (Ala.1993), cert. denied, 510 U.S. 1171, 114 S.Ct. 1207, 127 L.Ed.2d 554 (1994).
After considering the trial court's charge in its entirety, we conclude that the court adequately instructed the jury on intent. The word "intent" is not a term of art or legal jargon. It is a commonly used and understood word with a clear meaning. Moreover, as the United States Supreme Court has recognized:
"Jurors do not sit in solitary isolation booths parsing instructions for subtle shades of meaning in the same way that lawyers might. Differences among them in interpretation of instructions may be thrashed out in the deliberative process, with common sense understanding of the instructions in the light of all that has taken place at the trial likely to prevail over technical hairsplitting."
Boyde v. California, 494 U.S. 370, 380-81, 110 S.Ct. 1190, 1198, 108 L.Ed.2d 316 (1990).
In this case, the jurors' common sense understanding was sufficient; the court was not required to define the term. No plain error occurred. See Williams v. State, 710 So.2d 1276 (Ala.Cr.App.1996).

III.
Roberts next argues that the trial court erred when it failed to instruct the jury on theft, arson, and felony murder as lesser included offenses. Roberts raises this issue for the first time on appeal, so we will review it under the plain error rule.
A jury charge on a lesser included offense should be given when there is a reasonable theory from the evidence to support it. A court should not instruct the jury on a lesser included offense unless there is a rational basis for a guilty verdict on that charge. § 13A-1-9(b), Code of Alabama 1975. See Gaddy v. State, 698 So.2d 1100 (Ala.Cr.App.1995), aff'd, 698 So.2d 1150 (Ala.1997).
The trial court charged the jury on robbery-murder, arson-murder, and the lesser included offense of murder. The State argues, and we agree, that the trial court did not err when it failed to charge the jury on theft, arson, and felony murder, because there was no rational basis for those charges. The evidence presented at trial, including Roberts's confession, demonstrated a continuous chain of events *1253 that included stealing the victim's money, shooting her, and burning the house in an attempt to hide the crimes. The criminal acts were inextricably interwoven; there was no evidence or theory from which the jury could have found Roberts guilty of theft and/or arson without also finding him guilty of murder. Cf. Harris v. State, 671 So.2d 125, 126 (Ala.Cr.App.1995) (victim was asleep when robbed and murdered, and the evidence was sufficient to prove robbery-murder). There was no rational basis for a jury charge on either theft or arson.
Similarly, there was no rational basis in the evidence for a jury charge on felony murder. Roberts admitted in his statement that he intentionally shot the victim repeatedly to kill her. See Williams v. State, 601 So.2d 1062-75 (Ala. Cr.App.1991), aff'd, 662 So.2d 929 (Ala.) cert. denied, 506 U.S. 957, 113 S.Ct. 417, 121 L.Ed.2d 340 (1992).
Finally, we note that the jury was given the choice of finding Roberts guilty of one or two forms of capital murder, guilty of murder, or not guilty, and the jury convicted him of capital murder. Therefore, it is reasonable to conclude that an instruction on any other lesser included offense would not have affected the outcome of the case. E.g., Gaddy, supra. For the foregoing reasons, we hold that there was no plain error in the trial court's failure to charge the jury, sua sponte, on theft, arson, and felony murder as lesser included offenses.

IV.
Roberts contends that the prosecution made many allegedly impermissible comments during its arguments to the jury. He objected to none of the comments at trial. "While this failure to object does not preclude review in a capital case, it does weigh against any claim of prejudice." Ex parte Kennedy, 472 So.2d 1106-1111 (Ala.), cert. denied, 474 U.S. 975, 106 S.Ct. 340, 88 L.Ed.2d 325 (1985) (emphasis in original). We have stated on numerous occasions that it is not enough that a prosecutor's remarks were undesirable, but the question is whether the comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Burton v. State, 651 So.2d 641, 651 (Ala.Cr.App.1993) (quoting Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471-72, 91 L.Ed.2d 144 (1986)), aff'd, 651 So.2d 659 (Ala.1994), cert. denied, 514 U.S. 1115, 115 S.Ct. 1973, 131 L.Ed.2d 862 (1995). We have reviewed each of Roberts's claims regarding the prosecution's arguments, and we find no plain error.

A
Roberts argues that the prosecutor impermissibly commented on his right to remain silent. The prosecutor stated during his guilt phase closing argument:
"Now, I'm sure y'all are all asking yourself as I'm asking [myself]: `Why did he do it?' I can'twe can't lift off the top of David Roberts's head, as was done to the victim in this case, and pull out of his mind why he did what he did."
Later, the prosecutor stated:
"The most important thing is David Roberts's own words, the very last thing he said, and I don't think anybody can accuse Ken Mays of not taking extreme pains to give him the opportunity to tell everything he knew about the case. Going back and clarifying points, what have you."
Roberts contends that the first argument was a comment on his failure to testify and that the second argument suggested to the jury that Roberts should have presented some evidence in his own defense. Roberts did not object to the arguments at trial, so we review them now under the plain error rule.
A prosecutor's statement must be viewed in the context of all of the evidence presented and in the context of the complete closing arguments to the jury. The question here is whether, considered in *1254 context, the prosecutor's first statement was intended to be or was necessarily taken by the jury to be a comment on Roberts's failure to testify. Ex parte Wilson, 571 So.2d 1251, 1261 (Ala.1990). We hold that it was not. We have held that similar comments about "what was going on in the defendant's mind," when considered in context, did not rise to the level of plain error. See Ivery v. State, 686 So.2d 520 (Ala.Cr.App.1996). The prosecutor's statement here was made in the portion of the argument summarizing the State's evidence, and the prosecutor's point was that the State could not establish a motive for the murder, but it could nonetheless establish Roberts's guilt. After the comment to which Roberts now objects, the prosecutor stated,
"But he did it. There is no question about that. He has admitted that in the statements that were written. This lady is dead."
The argument was properly made.
Roberts contends that the second comment, regarding Ken Mays's taking extreme pains with his statements, "telegraphed to the jury" that he had the opportunity to, but did not amend his statements, and that this suggested that Roberts should have produced additional evidence. We disagree. The comment, considered in context, was nothing more than a portion of the prosecution's argument concerning Roberts's various statements to the police, which initially implicated Wendell Satterfield. Whatever is in evidence is subject to legitimate comment by counsel. Bankhead v. State, 585 So.2d 97 (Ala.Cr.App.1989), aff'd, 585 So.2d 112 (Ala.1991). There was no plain error.

B
Roberts argues that the prosecutor committed plain error when he told the jury that Wendell Satterfield was not on trial that day, and that Satterfield's involvement in the crime was not for this jury to decide, because only Roberts was on trial that day. Roberts did not object at trial, but he now contends that the remark mislead the jury to believe that Satterfield was entitled to a presumption of innocence and that the jury could not consider evidence of his guilt when it decided Roberts's fate. Roberts also argues that the comment implied that he was guilty and that he had the burden of proving his innocence. We disagree.
The prosecutor did not err in making the comment that the jury's only concern was David Roberts's guilt, not Wendell Satterfield's; Roberts was the only individual being tried at the time. The prosecutor acknowledged that Satterfield may have been involved, but correctly informed the jury that whether Satterfield was involved was not an issue for that jury. In no way did the comment about Satterfield imply that Roberts was guilty and Satterfield was innocent, nor did the comment somehow shift the burden of proof onto Roberts.
We note, furthermore, that the comment about Satterfield was a fair reply to Roberts's closing argument, in which he stated that Satterfield had some kind of power over him, that no one knew how Satterfield used that power but that he did, and that no one knew exactly what had happened at the murder scene. (R. 630-32.) In Arthur v. State, 711 So.2d 1031 (Ala.Cr.App. 1996), we held that there was no plain error where, in response to defense counsel's argument about accomplices who had not been charged, the prosecutor stated, "That really has nothing to do with the question of whether or not this defendant is guilty of what he is charged with. It's Tommy Arthur who is on trial today, not Judy Wicker, not Theron McKinney and not Teresa Roland." As in Arthur, we find no plain error.

C
Roberts contends that both of the prosecutors repeatedly expressed their personal opinions about the sufficiency of *1255 the evidence and about his guilt. In each of the instances cited by Roberts, the prosecutors were referring to the evidence in the case and the inferences they were drawing from that evidence and the State's burden of proof. The fact that the comments included phrases such as "I believe" and "I don't think" does not alter the fact that the prosecutors's comments were legitimate.
In Ex parte Rieber, 663 So.2d 999 (Ala. 1995), cert. denied, 516 U.S. 995, 116 S.Ct. 531, 133 L.Ed.2d 437 (1995), the Alabama Supreme Court stated:
"Furthermore, we view those comments that the prosecutor prefaced with `I think,' `I believe,' `I feel,' `I am satisfied,' and `I have no doubt,' as expressing his reasonable impressions from the evidence .... We note, however, that even if these comments were to be viewed as expressions of the prosecutor's personal opinions and, thus, as `crossing the line' as permissible argument, they, nonetheless, would not constitute reversible error."
See also Boyd v. State, 715 So.2d 825 (Ala.Cr.App.1997). No plain error occurred.

D
Roberts argues that one of the prosecutors committed plain error when he made several statements that encouraged the jury to recommend that Roberts be punished by death. None of the comments were outside the bounds of legitimate argument. See Kuenzel v. State, 577 So.2d 474 (Ala.Cr.App.1990), aff'd, 577 So.2d 531 (Ala.), cert. denied, 502 U.S. 886, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991). Furthermore, even if any error had occurred, it would have been harmless, because the jury recommended that Roberts be sentenced to life imprisonment without parole. Giles v. State, 632 So.2d 568 (Ala.Cr.App. 1992), aff'd 632 So.2d 577 (Ala.1993), cert. denied, 512 U.S. 1213, 114 S.Ct. 2694, 129 L.Ed.2d 825 (1994).

E
Roberts argues that the prosecutors vouched for the State's witnesses and for the quality of the investigation, and that these comments were plain error. We disagree.
First, Roberts contends that the prosecutor improperly told the jury that it did not see all of the photographs that were taken, and improperly implied that the State's witnesses' testimony was supported by information known only by the prosecution. While the prosecution must avoid statements that suggest to the jury that there exists evidence of a defendant's guilt that was not placed before the jury, we do not interpret the prosecutor's isolated statement, "Then y'all have heard and seenwe didn't put them inbut y'all have seen all of the testimony and you have seen pictures about the arson" to be such a remark. The statement is internally inconsistent, and the underlined portion is incorrect, because the prosecution did indeed introduce photographs relating to the arson. No error occurred, and certainly no error rising to the level of plain error.
Second, Roberts argues that the prosecutor's statements, that Officer Ken Mays took extreme pains to give Roberts the opportunity to tell all that he knew and that the law enforcement officers did their jobs and presented an overwhelming case, improperly vouched for the State's case and its witnesses. Roberts objected to neither comment at trial. As discussed in Section A of this issue, the reference to Officer Mays was a proper comment on the fact that Roberts gave several statements. The comment about the case was made in the context of a discussion of the presentation of the evidence and represented the prosecutor's impressions from that evidence. It is clear that the comments made were based solely on the evidence and do not constitute improper arguments or plain error. Hunt v. State, 659 So.2d 933, 940-43 (Ala.Cr.App.1994), *1256 aff'd, 659 So.2d 960 (Ala.), cert. denied, 516 U.S. 880, 116 S.Ct. 215, 133 L.Ed.2d 146 (1995).

F
Roberts's next allegation is that in his guilt phase closing argument, the prosecutor improperly argued that the guns he recovered for the authorities had been stolen from Satterfield's house. He claims the comment was improper because it suggested that he should be convicted based on this uncharged crime. We disagree. Evidence pertaining to the weapons, including the fact that they were stolen, was properly admitted as part of the res gestae of the crime, and the prosecutor did not err when he commented on and argued reasonable inferences from the evidence. No plain error occurred. See Knotts v. State, 686 So.2d 431 (Ala.Cr. App.) aff'd on return to remand, 686 So.2d 484 (Ala.Cr.App.1995), aff'd, 686 So.2d 486 (Ala.1996), cert. denied, 520 U.S. 1199, 117 S.Ct. 1559, 137 L.Ed.2d 706 (1997).

G
Roberts argues, also for the first time on appeal, that the prosecutors made several improper comments during their sentence phase arguments to the jury. Specifically, he argues that the prosecutors erred in stating their personal views that the death penalty was the proper sentence, in arguing that the jury had a duty to recommend a death sentence, in arguing nonstatutory aggravating circumstances, in making references to the Bible, in encouraging the jury to ignore mitigation evidence, and in misstating some of the facts. The comments were obviously not prejudicial to Roberts, because the jury recommended life imprisonment without parole. We could hold, on that basis alone, that no plain error occurred. We note in addition that the prosecution's comments were within the bounds of legitimate argument. Roberts's argument on this issue must fail.

V.
Roberts argues that the court's instructions to the jury were improper because, he says, the court "muddled" the robbery-murder and arson-murder instructions. Specifically, he claims that the court did not define "during" as that word was used in the charge and, as a result, the jury was not adequately instructed that the murder had to occur "during" the underlying felony. He further alleges that the jury was not properly instructed on the force element of robbery. Roberts did not object to the instructions at trial; this failure to object weighs heavily against a finding of prejudice in our review for plain error. See Knotts v. State, 686 So.2d 431 (Ala.Cr. App.1995).
A jury instruction should not be judged in isolation; it must be viewed in context of the jury charge as a whole. Knotts, supra. There is no plain error when a court's jury charge substantially follows the Alabama Pattern Jury Instructions. Boyd v. State, 715 So.2d 825 (Ala.Cr.App.1997).
Roberts's primary complaint is that the trial court failed to define "during." The capital murder statute and the pattern jury instruction define "during" as in the course of the commission of, in connection with, or in immediate flight from the commission of the underlying felony. § 13A-5-39(2), Ala.Code 1975; Alabama Pattern Jury Instructions: Criminal (3d ed. 1994). The trial court here instructed the jury simply that to find Roberts guilty of murder during the course of a robbery, it had to find that the murder was committed and that it was committed during a robbery or an attempted robbery. The court instructed the jury that, to find Roberts guilty of murder during the course of arson, it had to find that the murder was committed and that it was committed during the arson. (R. 659-667). The word "during," even though it is specifically defined by statute as it relates to capital murder cases, is not legal jargon; it is a common term that can *1257 be understood by average jurors in its common usage. Roberts cannot show that the failure to provide a definition of "during" confused the jury or prejudiced him. To the contrary, the definition of that worked in the statute and in the pattern jury instructions, if given, would have instructed the jury that Roberts also would be liable if it found that he committed the murder during his flight from the underlying felonies. We find no plain error here. See Ex parte Windsor, 683 So.2d 1042, 1058-59 (Ala.1996), cert. denied, 520 U.S. 1171, 117 S.Ct. 1438, 137 L.Ed.2d 545 (1997) (robbery-murder instruction without defining "during" upheld).
As to Roberts's assertion that the instruction on robbery was inadequate because it did not inform the jury that proof of force was required to support a finding of guilty as to robbery, the record fails to support his claim. The trial court fully instructed the jury on robbery, in compliance with the pattern jury instructions. No plain error occurred.

VI.
Roberts argues that the trial court erred to reversal when it instructed the jury during the guilt phase that, even if Roberts was convicted of both counts of capital murder, he would be punished for only one count. Roberts did not object to this charge at trial; this failure to object weighs heavily against any claim of prejudice. Boyd v. State, 715 So.2d 825 (Ala.Cr. App.1997).
In the final portion of its charge to the jury, the court explained the verdict forms. (R. 670-74.) The court then instructed the jury generally on sentencing:
"Should you find the defendant guilty under both counts of the indictment, that is, both counts, both capital offenses, he would be only punished under one of those. Should you find the defendant guilty of any offense, either the charges laid out in the indictment or the lesser included offense of murder, you would not need to consider, and it would not be at this point any of your concern, as to what the punishment might be. The matter of punishment, should you find that the defendant is guilty under the capital offense under either or both Count I and 2 of the indictment, then it would be necessary for us to have a sentence hearing. And that sentence hearing would be held before the same 12 of you to determine the punishment that would be given."
"The phase of the trial that we are in right now is the guilt or innocence part of the trial. And the only thing that you are to concern yourselves with during your deliberations at this point is the guilt or innocence of the defendant."
The first sentence of foregoing instruction, to which Roberts now objects, does not constitute plain error. Rather, it is a correct statement of the law, because Roberts could serve only one sentence even if he was convicted of both counts of capital murder. See Ex parte McWilliams, 640 So.2d 1015, 1022 (Ala.1993). Moreover, the trial court's remaining instructions made it clear to the jury that sentencing was not a proper consideration for the jury during the guilt phase deliberations. No error occurred here.

VII.
Roberts argues that the trial court erred when it admitted into evidence photographs of the victim and the crime scene. Specifically, he objects to State's exhibits 16 through 20; four of these are photographs of the victim taken from several angles as she lay on the couch where she was killed, and the fifth is a front view of the victim's face with her head being held by a pathologist. He also objects to State's exhibits 22 through 24, which depict the victim's clothed torso and right arm. Roberts objected to the photographs on grounds that they had no probative value and served only to inflame the jury. The trial court overruled the objection.
*1258 Photographs that depict a victim's wounds are generally admissible, even if they are gruesome, cumulative, or relate to undisputed matters. Ex parte Trawick, 698 So.2d 162 (Ala.1997). The photographs here corroborated the testimony of the witnesses who discovered the body and of the pathologist, who described the wounds. That some of the photographs were gruesome does not render them inadmissible. Boyd v. State, 715 So.2d 825 (Ala.Cr.App.1997).
Finally, we note that the decision regarding the admissibility of photographs lies within the trial court's sound discretion. See, Ex parte Trawick, supra. The trial court did not abuse its discretion in admitting these photographs of the scene and the victim.

VIII.
Roberts next alleges that he is entitled to a new trial because the trial court did not ask the prospective jurors whether they would automatically vote to impose the death penalty. Roberts failed to object at trial to the court's lack of "reverse Witherspoon" questioning of the venire; therefore, we will review the issue under the plain error rule. Rule 45A, Ala. R.App. P. We find no plain error.
Alabama courts on numerous occasions have held that a trial court does not commit plain error when it fails to question veniremembers sua sponte on any pro-death penalty bias. See Ex parte Brown, 686 So.2d 409, 402-22 (Ala.1996), cert. denied, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997); and Ivery v. State, 686 So.2d 495 (Ala.Cr.App.1996), and the cases cited in each. To the contrary, the burden of asking such questions, or requesting the judge to ask them, lies with the defendant.
Not only do we find that the trial judge did not err, we note that the jury recommended life imprisonment. Therefore, he could have suffered no prejudice even if we had found any error here.

IX.
Roberts argues that the trial court's instruction on reasonable doubt was erroneous and that it improperly shifted the burden of proof to him. Specifically, he asserts that the court's instruction negated the presumption of innocence accorded a criminal defendant and imposed a presumption of guilt, and that the court "telegraphed that justice required conviction." No objection to the reasonable doubt instruction was made at trial, so we must review it pursuant to the plain error rule. Rule 45A, Ala. R.App. P.
The court's instruction on reasonable doubt was thorough. It repeatedly referred to the defendant's presumption of innocence and to the State's burden of proving his guilt beyond a reasonable doubt, and it substantially complied with the pattern jury instruction on reasonable doubt. Although Roberts contends that the court instructed the jury that it should presume the indictment to be true, the trial court stated, "[T]he fact that the grand jury returned an indictment against the defendant is not to be considered by you as evidence of his guilt. You are to infer no guilt on the part of the defendant simply because the grand jury returned this indictment."
No error, and certainly no error rising to the level of plain error, appears in the reasonable doubt instruction.

X.
Roberts contends that Wendell Satterfield's testimony about the victim's having money in her possession when she was killed should not have been admitted because, he argues, it was hearsay. Roberts made no objection until after Satterfield had testified that the victim had told him she had just been paid and that she had made $180 that week. Our review of his testimony must now proceed under the plain error rule. After Satterfield made the statement, Roberts objected "to further *1259 testimony about what was said"; that objection was overruled and Satterfield then testified that the victim had offered him money and that he had declined it. Roberts's objection did not specify any grounds for this latter objection, so we must review the testimony now for plain error.
Even if Roberts had properly preserved the issue for review, the admission of this testimony would have been harmless error because it did not affect Roberts's substantial rights. Roberts told the police that he took $143 from the victim's wallet before he shot her, and that statement was read to the jury. (R. 605.) Roberts's own statement provided direct evidence of the fact that the victim had money when she was killed; Satterfield's testimony provided, at most, cumulative evidence that Roberts took the money.

XI.
Roberts argues that the trial court erroneously denied his motion to suppress and admitted into evidence three statements he gave to the police during the investigation. Without elaboration, Roberts claims that the statements were involuntary. Roberts gave all of the statements to which he now objects before he was taken into custody. In two of the statements he denied all involvement in the murder.
A confession is presumed to be involuntary, and the burden is on the State to prove its voluntariness. Ex parte Gaddy, 698 So.2d 1150 (Ala.1997). The procedural safeguards provided by Miranda v. Arizona are required only when the accused is taken into custody and questioned. Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). The Alabama Supreme Court has held that the findings of the trial court following a hearing regarding the voluntariness of a confession will be upheld on appeal unless the findings are manifestly contrary to the great weight of the evidence. Ex parte Matthews, 601 So.2d 52, 53 (Ala.), cert. denied, 505 U.S. 1206, 112 S.Ct. 2996, 120 L.Ed.2d 872 (1992).
At the suppression hearing held outside the jury's presence, the officers who questioned Roberts testified that Roberts was given Miranda, warnings even though he was not in custody. Their testimony also established that Roberts gave his statements voluntarily. Moreover, the first two statements were not confessions. The trial court's decision to admit the third statement, in which Roberts confessed to killing the victim, as voluntary was not manifestly contrary to the great weight of the evidence, and it is due to be upheld.

XII.

A
Roberts argues that the trial court erred when it failed to excuse for cause prospective juror J.Y. Roberts contends that J.Y. should have been excused because she knew Roberts and his family as a result of her employment as the director of Marion County's Department of Human Resources. Because she was not excused for cause, Roberts argues, he was forced to use his first peremptory strike to remove J.Y. from his jury. J.Y. stated that she was the director of Human Services. She also stated that she knew Roberts and his parents. When the prosecutor asked J.Y. whether the fact that she knew Roberts would affect her decision in the case, she said she would like to talk to the judge about that. Voir dire questioning continued, and then the record reflects the following:
"THE COURT: Any challenges?
"(Discussion between court and counsel off record.)
"THE COURT: [J.Y.], you indicated you wanted to discuss something with me?
"PROSPECTIVE JUROR [J.Y.]: Yes, sir.
"THE COURT: Would you come up at this time?

*1260 "(Prospective Juror approached the bench for an off-the-record discussion.)
"THE COURT: [J.Y.], based upon what you have just disclosed to me, do you think it would be impossible for you to sit on this case, dispel everything from your mind and decide the case solely upon the evidence?
"PROSPECTIVE JUROR: I think I could.
"THE COURT: Do you want to ask her any questions?
"[DEFENSE COUNSEL]: Did you understand the judge's question?
"PROSPECTIVE JUROR: Yes, sir."
Roberts did not challenge J.Y. for cause, but he later exercised a peremptory challenge to remove J.Y. from the jury.
A challenge for cause is justified only when there is a proper statutory ground or something that indicates absolute bias or favor, and leaves nothing to the discretion of the trial court. Ex parte Trawick, 698 So.2d 162 (Ala.1997). A juror who can eliminate the influence of previous feelings and render a verdict based on the evidence and the law need not be excused for cause. Id.
J.Y. stated that she was acquainted with Roberts and his parents, and several of the State's witnesses, but that she could dispel everything from her mind and decide the case based on the evidence. The trial court is vested with considerable discretion in determining whether a prospective juror's demeanor and answers to voir dire questions indicate that the juror should be disqualified, and the court's decision on that issue is entitled to deference on review. See, Trawick, supra. J.Y. unequivocally stated that she could try the case based only on the evidence and that she could set aside any opinions she might have had. The court did not commit plain error in failing to excuse for cause this prospective juror. See Williams v. State, 710 So.2d 1276 (Ala. Crim.App.1996) (the trial court did not commit plain error when it failed to sua sponte remove prospective juror for alleged bias, because no statutory or common law ground existed).

B
Roberts did not raise as an issue at trial or on appeal the absence of a transcript of the conversation between juror J.Y. and the trial court. We detected this omission during our review of the record. Rule 45A, Ala. R.App. P.
Rule 19.4, Ala. R.Crim. P., states that in all capital cases, the court reporter shall take full stenographic notes of the voir dire examination of the jury and of the arguments of counsel. Rule 19.4 also provides that this duty may not be waived or abrogated.
Ex parte Harris, 632 So.2d 543 (Ala. 1993), aff'd, 513 U.S. 504, 115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995), presented nearly identical circumstances. Although Rule 21(a), Ala. R.Crim. P.(Temp.), which was in effect when Harris was tried, required only full transcription of counsel's argument, counsel requested and the trial court ordered that the court reporter record and transcribe all proceedings in all phases of the case. The court reporter failed to record and transcribe a portion of the voir dire examination of the jury and certain portions of the bench conferences. The Alabama Supreme Court held that, after it granted the motion to record all proceedings, the trial court had a duty to ensure that all proceedings were recorded and transcribed. The court further held:
"[W]e must conclude that the failure to record and transcribe a portion of the voir dire examination of the jury and certain portions of the bench conferences, in light of the fact that Harris was represented on appeal by counsel other than the attorney at trial, constituted error. See Ex parte Godbolt, 546 So.2d 991 (Ala.1987). Thus, the question becomes whether that error constituted reversible error.

*1261 "`When, [as in this case], a criminal defendant is represented on appeal by counsel other than the attorney at trial, the absence of a substantial and significant portion of the record even absent any showing of specific prejudice or error, is sufficient to mandate reversal. The wisdom of the rule is apparent. When a defendant is represented on appeal by the same attorney who defended him at trial, the court may properly require counsel to articulate the prejudice that may have resulted from the failure to record a portion of the proceedings. Indeed, counsel's obligation to the court alone would seem to compel him to initiate such disclosure. The attorney, having been present at trial, should be expected to be aware of any errors or improprieties which may have occurred during the portion of the proceedings not recorded. But when a defendant is represented on appeal by counsel not involved at trial [as in this case], counsel cannot reasonably be expected to show specific prejudice. To be sure, there may be some instances where it can readily be determined from the balance of the record whether an error has been made during the untranscribed portion of the proceedings. Often, however, even the most careful consideration of the available transcript will not permit us to discern whether reversible error occurred while the proceedings were not being recorded. In such a case, to require new counsel to establish the irregularities that may have taken place would render illusory an appellant's right to [have the reviewing court] notice plain errors or defects. ...
"`We do not advocate a mechanistic approach to situations involving the absence of a complete transcript of the trial proceedings. We must, however, be able to conclude affirmatively that no substantial rights of the appellant have been adversely affected by the omissions from the transcript. When ... a substantial and significant portion of the record is missing, and the appellant is represented on appeal by counsel not involved at trial, such a conclusion is foreclosed....'
"Ex parte Godbolt, 546 So.2d at 997. (Citations omitted; emphasis added [in Harris]). (Quoting with approval of United States v. Selva, 559 F.2d 1303, 1305-06 (5th Cir.1977))."
"We have carefully reread those portions of the record where each omission occurred and have reread the several pages before and the several pages after those omitted portions, to ascertain, if possible, the content of substance of the discussions not transcribed, so as to determine whether `a substantial and significant portion of the record' is missing and to determine whether we could `conclude affirmatively that no substantial rights of [Harris] have been adversely affected by the omissions from the transcript.' Id."
Ex parte Harris, 632 So.2d at 545-46 (footnote omitted; emphasis original).
In Harris, the Alabama Supreme Court conducted an extensive review of the record and concluded that the unrecorded portions did not affect the outcome of the case and that, under the facts presented in that case, the error in failing to ensure that the proceedings were transcribed was harmless.
We are mindful of the Alabama Supreme Court's admonition in Ex parte Harris, that the lack of a complete transcript would not always be harmless error. We hold however, that under the facts of this case, the failure to record and transcribe this isolated portion of the questioning of one prospective juror was harmless. The record reflects that the court's discussion with J.Y. occurred at the bench after the attorneys' voir dire questioning was complete. It appears that attorneys for both parties were present during the discussion; there was no objection to the discussion being held at the bench, and it is possible that defense counsel was aware *1262 that the discussion was not on the record. Moreover, after its discussion with J.Y., the court asked her if she could try the case only on the evidence presented, and she said she could do so. Neither party asked J.Y. any questions about J.Y.'s ability to give Roberts a fair trial or moved to strike her for cause, suggesting that there were no grounds to strike her based on her statements at the bench.
We have carefully reread the entire voir dire proceedings, focusing on the portions involving J.Y., and have concluded that the omitted discussion did not constitute "a substantial and significant portion of the record" and we have concluded that none of Roberts's substantial rights were adversely affected by the omission. Rather, in view of J.Y.'s unequivocal statement that she could give Roberts a fair trial and in view of Roberts's failure to ask any substantive questions or to challenge J.Y. for cause, we conclude that the omission had no effect on the outcome of the case and that the error in failing to transcribe a part of the questioning of J.Y. was harmless.

XIII.
Roberts argues that § 15-12-21, Ala. Code 1975, which provides for the compensation of appointed counsel for indigent defendants amounts to an unconstitutional "taking" of private property because, he says, the value of the legal services delivered exceeds the statutory compensation limits. He argues, too, that the statute deprives defendants of the effective assistance of counsel and of equal protection because, he argues, the compensation limits discourage attorneys from representing indigent capital defendants, thereby effectively reducing the quality of legal representation provided. Roberts raises this issue for the first time on appeal. While his failure to object does not preclude review, it weighs against any claim of prejudice. Kuenzel v. State, 577 So.2d 474 (Ala. Cr.App.1990), aff'd, 577 So.2d 531 (Ala.), cert. denied, 502 U.S. 886, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991).
It is important to note that Roberts was represented by retained counsel until sentencing. Second, we note that these arguments have been rejected by Alabama courts. See Ex parte Brown, 686 So.2d 409 (Ala.1996); cert. denied, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997). In accordance with those decisions, we hold that there was no plain error here.

XIV.
Roberts argues that the trial court refused to grant his motion to supplement the record with the transcript of sidebar conferences and the transcript of jury.
Roberts filed a motion to supplement the record with several items, including the presentence report, transcripts of sidebar conferences and jury striking, and requested jury instructions filed by the parties. The trial court ordered that the presentence report be made a part of the record. After considering the motion and the arguments of counsel, and after consulting with the court reporter and the circuit clerk, the court entered an order stating that there were no transcripts, records, or motions such as those requested by Roberts, and that there was no additional information that could properly be added to the record.
On appeal, Roberts argues that the court improperly denied his motion as to the transcripts of sidebar conferences and the jury striking. We disagree. The trial court determined that no transcripts or records of these events existed.
Moreover, Rule 19.4(a), Ala. R.Crim.P.,[1] states that in all capital cases, the court reporter shall record the voir dire of the jury and the arguments of counsel. The court reporter, however, is *1263 not required to transcribe the various bench conferences. See also Ex parte Harris, 632 So.2d 543, 545 (Ala.1993) (the court reporter was not required to record every incidental sidebar discussion unless counsel so requests or the court so directs), aff'd, 513 U.S. 504, 115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995). Similarly, the actual striking of the jury is not a matter that must be recorded; only the voir dire of the venire must be transcribed. Rule 19.4, Ala. R.Crim. P.; Ex parte Land, 678 So.2d 224, 245 (Ala.1996). No error occurred when the court denied Roberts's motion to supplement the record.
In his motion filed in circuit court, Roberts requested several other items, but his argument to this court addresses only the items discussed above. The court reporter recorded and transcribed those portions of the proceedings required to be transcribed by statute and by court rule. Accordingly, we need not address the remaining items Roberts requested in his motion to supplement.

XV.
Roberts contends that the State failed to prove that he was guilty either of arson-murder or robbery-murder. Specifically, he argues that the force element of robbery was not established, and that the arson was a mere afterthought and that neither offense therefore would support a capital murder conviction. We disagree.
A verdict of conviction is not to be set aside on grounds of insufficiency of evidence unless, after considering the testimony in the light most favorable to the State, the preponderance of the evidence against the verdict is so decided that this court is convinced the verdict is wrong and unjust. See McKinney v. State, 654 So.2d 95, 99-100 (Ala.Cr.App.1995). The weight and probative value of the evidence and the inferences to be drawn from that evidence are matters for the jury to determine. See Smith v. State, 698 So.2d 189 (Ala.Cr.App.1996), aff'd, 698 So.2d 219 (Ala.1997). The State presented ample evidence to support the capital murder charges, and the jury's verdicts are supported beyond a reasonable doubt by evidence of Roberts's guilt.

A
Roberts contends that there was no proof that he used force for the purpose of accomplishing the theft, so he cannot be guilty of robbery-murder. At trial, he argued he used no force because the victim was asleep. On appeal, he asserts a new argument, that he used no force in the theft because a substantial amount of time separated his theft of the victim's property and his killing the victim.
To sustain a conviction under § 13A-5-40(a)(2) the State must prove beyond a reasonable doubt (1) robbery in the first degree or an attempt thereof, as defined in § 13A-8-41; (2) murder as defined in § 13A-6-2(a)(1); and (3) that the murder was committed "during" the robbery or attempted robbery. "During" has been defined to mean in connection with or in the course of, or in the immediate flight from the commission of the underlying felony. § 13A-5-39(2), Ala.Code 1975. "The capital crime of robbery when the victim is intentionally killed is a single offense beginning with the act of robbing or attempting to rob and culminating in the act of intentionally killing the victim." Hallford v. State, 548 So.2d 526, 534 (Ala.Cr.App. 1988), aff'd 548 So.2d 547 (Ala.), cert. denied, 493 U.S. 945, 110 S.Ct. 354, 107 L.Ed.2d 342 (1989). If the robbery and murder are unrelated events, a capital conviction cannot stand. The defendant's intent at the time of the crime is a jury question, however. Crowe v. State, 435 So.2d 1371, 1379 (Ala.Cr.App.1983). The defendant's intent to commit robbery-murder may be correctly inferred where the killing and robbery were part of a continuous chain of events. Hallford, supra; Harris v. State, 671 So.2d 125 (Ala.Cr.App. 1995) (the defendant shot the sleeping victim, then removed property from the victim's *1264 home; conviction for robbery murder was proper).
The State presented evidence that, when Roberts entered Satterfield's house, he intended to murder the victim, and he did so by shooting her in the head while she slept. Before he killed her, he took her money and put his belongings in his car. Viewing the evidence in the light most favorable to the State, we conclude that the jury could easily have found beyond a reasonable doubt that the robbery and the murder were related events, and that Roberts intended to murder the victim when he committed the robbery.

B
Roberts also argues that the arson-murder conviction must be reversed. He claims that there was scant evidence, at best, that he intended to commit arson at the time he committed the murder. To the contrary, he claims, the evidence shows that the arson was a "mere afterthought." At trial, Roberts argued simply that the State did not present a prima facie case, so this specific claim is first raised on appeal.
Roberts confessed to the police that when he entered Satterfield's house he intended to kill the victim. He also stated that after he murdered her, he went outside to pick up containers of gasoline by the basement door, where he knew they had been left for him to use in the arson. Roberts further said that he first poured the gasoline in the den and on the body, as, he says, Satterfield had instructed him to do, so the body could not be identified. The evidence established that Roberts doused the body and several rooms in the house with the gasoline.
The jury could easily have found beyond a reasonable doubt that the arson and the murder were part of a continuous chain of events, and that the arson was not a mere afterthought.
The State presented overwhelming evidence of Roberts's guilt of murder during the course of a robbery and murder during the course of arson.

PENALTY PHASE

XVI.
Roberts argues that the trial court erred to reversal when, at his sentence hearing, it excluded his family's testimony regarding his emotional distress, duress, and the domineering influence of Wendell Satterfield. He claims that if the court had allowed his family members to testify about his emotional state and his susceptibility to Satterfield's influence, more than seven of the jurors would have voted to impose a life sentence and the trial court might have followed the jury's recommendation and imposed a life sentence.
Sentence hearings in capital cases are governed by statute. The law provides, in relevant part:
"(c) At the sentence hearing evidence may be presented as to any matter that the court deems relevant to sentence and shall include any matters relating to the aggravating and mitigating circumstances referred to in Sections 13A-5-49, 13A-5-51 and 13A-5-52. ...
"(d) Any evidence which has probative value and is relevant to sentence shall be received at the sentence hearing regardless of its admissibility under the exclusionary rules of evidence, provided that the defendant is accorded a fair opportunity to rebut any hearsay statements. ...
". . . .
"(g) The defendant shall be allowed to offer any mitigating circumstance defined in Sections 13A-5-51 and 13A-5-52. When the factual existence of an offered mitigating circumstance is in dispute, the defendant shall have the burden of interjecting the issue, but once it is interjected the state shall have the burden of disproving the factual existence *1265 of that circumstance by a preponderance of the evidence."
§ 13A-5-45, Ala.Code 1975.
"Mitigating circumstances shall include, but not be limited to the following:
". . . .
"(2) The capital offense was committed while the defendant was under the influence of extreme mental or emotional disturbance;
". . . .
"(5) The defendant acted under extreme duress or under the substantial domination of another person;
". . . ."
§ 13A-5-51, Ala.Code 1975.
Terry Roberts, the defendant's brother, attempted to testify about conversations he and his brother had had that related to threats on their father's life, to the defendant's nightmares, and to the defendant's fear of Wendell Satterfield. The State objected to this testimony on hearsay grounds, and the trial court sustained the objections. Terry Roberts testified that he had personal knowledge of the cause of his brother's emotional disturbance, but the trial court sustained the State's objection to this testimony on the ground that the witness could not testify as to the defendant's mental health problems because he was not a mental health professional. Terry Roberts was not permitted to elaborate on what he knew about the cause of the defendant's emotional problems. Terry Roberts also was precluded from testifying about Wendell Satterfield's personality; the court sustained the State's objection that Satterfield's personality was not relevant. Roberts then argued that the court was handicapping him in his attempt to prove a statutory mitigating circumstance, i.e., the substantial domination of another.
Brenda Roberts, the defendant's mother, testified that the defendant had discussed his dreams with her; the State objected to this testimony, the trial court sustained the objection, and Ms. Roberts did not testify as to those conversations.
Roberts argues that he was not permitted to fully develop his case for mitigating circumstances, in which he attempted to prove that at the time of the murder he was under the influence of extreme mental or emotional disturbance and that he acted under extreme duress or under the substantial domination of Wendell Satterfield. § 13A-5-51(2), (5), Ala. Code 1975. We agree.
"The sentencing hearing is one of the most important and critical stages under Alabama's death penalty law. The guilt stage has passed. Now an experienced trial judge must consider the particularized circumstances surrounding the offense and the offender and determine if the accused is to die or be sentenced to life imprisonment without parole. It is a due process hearing of the highest magnitude and the exclusionary rules of evidence play no part. The trial evidence must be reviewed to determine all of the aggravating circumstances leading up to and culminating in the death of the victim and then all the mitigating circumstances must be considered in determining if any outweigh the aggravating circumstances so found in the trial court's findings of fact. Unless and until this is done `the trial judge cannot fairly weigh the aggravating and mitigating circumstances, and the appellate court adequately review his sentencing decision.'"
Richardson v. State, 376 So.2d 205, 224 (Ala.Cr.App.1978), aff'd, 376 So.2d 228 (Ala.1979).
In capital cases, the sentencing body may not be precluded from considering any relevant mitigating evidence. Hitchcock v. Dugger, 481 U.S. 393, 394, 107 S.Ct. 1821, 1822, 95 L.Ed.2d 347 (1987). Our sentencing statutes are in accord with this principle; § 13A-5-45(d) specifically provides that the exclusionary *1266 rules of evidence do not apply to evidence presented at sentence hearings.
Roberts relies on two statutory mitigating circumstancesthat he suffered from extreme mental disturbance and was under the substantial influence of another and he argued those mitigating circumstances to the jury. Roberts had the burden of proving the existence of those circumstances, and he was repeatedly precluded by the court from attempting to do so, primarily because he offered hearsay evidence. "The exclusion of hearsay evidence that is highly relevant to a critical issue in the penalty phase of a trial may constitute reversible error." Green v. Georgia, 442 U.S. 95, 97, 99 S.Ct. 2150, 2151-52, 60 L.Ed.2d 738 (1979). In this case, the exclusion of the hearsay evidence offered by Terry and Brenda Roberts, and Terry Roberts's testimony, based on his knowledge of the cause of the defendant's emotional disturbance, was reversible error.
The jury returned a verdict of life imprisonment without parole, so Roberts could not have received a more favorable sentence recommendation even if the testimony had not been limited. However, the testimony might have altered the trial court's mitigating circumstance findings and its decision to override the jury's verdict. Therefore, the sentence must be reversed and the cause remanded for a new sentence hearing before the trial court. Following the sentence hearing, the trial court shall, in accordance with the relevant statutes, weigh the aggravating and mitigating circumstances it finds to exist, determine the sentence, and prepare a sentencing order.[2] These proceedings are to be conducted and the return to remand filed within 70 days. On return to remand, we will discuss the remaining issues raised by Roberts to the extent they are relevant, and will review the sentence proceedings.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
LONG, P.J., and McMILLAN, BROWN,[*] and BASCHAB,[*] JJ., concur.

On Return To Remand
COBB, Judge.
On May 23, 1997, this Court affirmed Robert's conviction and remanded this cause to the trial court with instructions that that court hold a new sentence-phase hearing and, following the sentence-phase hearing, weigh the aggravating and mitigating circumstances it found to exist, determine the sentence, and prepare a sentencing order in accordance with the relevant statutes. Roberts v. State, 735 So.2d 1244 (Ala.Crim. App.1997). On August 14-15, 1997, the trial court conducted a new sentence-phase hearing. At that hearing, Roberts called as witnesses a psychologist, Allen E. Shealy, Ph.D., and his mother, Brenda Roberts. In accordance with our May 23, 1997, opinion, the trial court allowed both witnesses to relate relevant hearsay evidence in Roberts's attempt to prove that, at the time of the killing, he was under the influence of extreme mental or emotional disturbance and that he had acted under extreme duress or under the substantial domination of another person, Wendell Satterfield. § 13A-5-51(2), (5), Ala.Code 1975. At the conclusion of the hearing, the trial court again overrode the jury's recommendation of life imprisonment without parole and sentenced Roberts to death. The trial court has submitted a new sentencing order. We will now review those remaining relevant issues raised by Roberts in his original direct appeal.

*1267 I.
Roberts argues that the trial court failed to consider evidence that, at the time of the killing, he was under duress and was substantially dominated by another person; that the trial court failed to consider evidence that he was unable to conform his conduct to the requirements of the law; that the trial court ignored mitigating evidence of remorse; and that the trial court failed to consider other nonstatutory mitigating evidence. At the new sentence-phase hearing, Roberts also argued that his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired. We will review these allegations of error based on the trial court's consideration of all mitigating circumstances as recorded in the new sentencing order.
It is clear from the sentencing order that the trial court did consider the evidence offered to prove the mitigating circumstances proffered by Roberts. The trial court stated that it considered all the evidence offered regarding statutory and nonstatutory mitigating circumstances, even though it found that the appellant had not established any statutory mitigating circumstances. In fact, the trial court specifically addressed the evidence offered by Roberts to prove those mitigating circumstances Roberts now alleges the trial court ignored.
In compliance with Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964-65, 57 L.Ed.2d 973 (1978), and its progeny, the trial court allowed the appellant to present all of the mitigating evidence he wanted to present, and the trial court fully considered that evidence in imposing the sentence. "`While Lockett and its progeny require consideration of all evidence submitted as mitigation, whether the evidence is actually found to be mitigating is in the discretion of the sentencing authority.'" Ex parte Slaton, 680 So.2d 909, 924 (Ala. 1996) (quoting Bankhead v. State, 585 So.2d 97, 108 (Ala.Crim.App.1989)). See also Carroll v. State, 599 So.2d 1253 (Ala. Crim.App.1992), aff'd, 627 So.2d 874 (Ala. 1993), cert. denied, 510 U.S. 1171, 114 S.Ct. 1207, 127 L.Ed.2d 554 (1994); and Ex parte Harrell, 470 So.2d 1309 (Ala.1985).
In this case, where the trial court specifically stated in its sentencing order that it had considered all the evidence offered by Roberts, the claim that the trial court failed to consider certain statutory and nonstatutory mitigating evidence is not supported by the record. The trial court did not err in finding there were no statutory mitigating circumstances. Regarding nonstatutory mitigating circumstances, the trial court acknowledged in the sentencing order that the evidence showed that Roberts suffered from a personality disorder. The court was not required to state that it had considered a particular mitigating circumstance, and the lack of a specific finding did not mean that the court did not consider that evidence. Ex parte Haney, 603 So.2d 412 (Ala.1992), cert. denied, 507 U.S. 925, 113 S.Ct. 1297, 122 L.Ed.2d 687 (1993). Roberts's claim that the trial court did not consider the evidence of statutory and nonstatutory mitigating circumstances is without merit.

II.
Roberts claims the trial court's imposition of a death sentence, after the jury had returned a recommendation of life imprisonment without parole, was unconstitutional and violated his constitutional rights. In support of his claim, Roberts argues that only three states that impose the death penalty permit a trial judge to override a jury verdict recommending life imprisonment, and that Alabama is the only state of the three that does not provide any guidelines for weighing and considering the jury's recommendation.
Section 13A-5-47(e), Ala.Code 1975, provides:
"In deciding upon the sentence, the trial court shall determine whether the aggravating circumstances it finds to exist *1268 outweigh the mitigating circumstances it finds to exist, and in doing so the trial court shall consider the recommendation of the jury contained in its advisory verdict, unless such a verdict has been waived pursuant to Section 13A-5-46(a) or 13A-5-46(g). While the jury's recommendation concerning sentence shall be given consideration, it is not binding upon the court."
This precise issue was thoroughly discussed and decided adversely to the appellant by the United States Supreme Court in Harris v. Alabama, 513 U.S. 504, 115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995).[1] The Court in Harris held that the "`Eighth Amendment is not violated every time a State reaches a conclusion different from a majority of its sisters over how best to administer its criminal laws.'" Harris, 513 U.S. at 509, 115 S.Ct. at 1034, 130 L.Ed.2d at 1012, quoting Spaziano v. Florida, 468 U.S. 447, 464, 104 S.Ct. 3154, 3164, 82 L.Ed.2d 340 (1984). The Harris Court held that the "`Eighth Amendment does not require the State to define the weight the sentencing judge must accord to an advisory jury verdict.'" Harris, 513 U.S. at 511, 115 S.Ct. at 1036, 130 L.Ed.2d at 1013-14. Scott v. State, 728 So.2d 164 (Ala.Crim.App.1997). Thus, Roberts's argument is without merit.

III.
Roberts next argues that the "double counting" of robbery as an element of the capital offense and as an aggravating circumstance violated his Fifth, Sixth, Eighth, and Fourteenth Amendment rights under the United States Constitution and his rights under Alabama law. Because Roberts did not object to this "double counting" at trial, we must review this issue under the plain error rule. Rule 45A, Ala.R.App.P.
Section 13A-5-50, Ala.Code 1975, provides, in pertinent part:
"The fact that a particular capital offense as defined in Section 13A-5-40(a) necessarily includes one or more aggravating circumstances as specified in Section 13A-5-49 shall not be construed to preclude the finding and consideration of that relevant circumstance or circumstances in determining sentence."
Section 13A-5-50 clearly provides that a jury may consider an element of capital murder as an aggravating circumstance if that element is specified in § 13A-5-49. Furthermore, this court has repeatedly held that the use of an element of capital murder as an aggravating circumstance does not implicate the Double Jeopardy Clause because it does not punish a defendant twice for the same offense. Burton v. State, 651 So.2d 641 (Ala.Crim.App. 1993), aff'd, 651 So.2d 659 (Ala.1994), cert. denied, 514 U.S. 1115, 115 S.Ct. 1973, 131 L.Ed.2d 862 (1995).
"`This practice, known as "double counting" or "overlapping," has been upheld. Haney v. State, 603 So.2d 368 (Ala.Crim. App.1991), aff'd, 603 So.2d 412 (Ala. 1992), cert. denied, 507 U.S. 925, 113 S.Ct. 1297, 122 L.Ed.2d 687 (1993); Kuenzel [v. State, 577 So.2d 474, 489 (Ala.Crim.App.1990), aff'd, 577 So.2d 531 (Ala.), cert. denied, 502 U.S. 886, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991).]
". . . .
"`"A capital punishment scheme, under which the same felony may form the basis of an essential element of the crime and an aggravating circumstance for consideration by the jury in recommending a sentence, does not constitute a denial of the guarantee against double jeopardy."
"`Kuenzel, 577 So.2d at 488, quoting Fortenberry v. State, 545 So.2d 129, 142 (Ala.1989), cert. denied, 495 U.S. 911, 110 S.Ct. 1937, 109 L.Ed.2d 300 (1990).' "Burton, 651 So.2d at 657-58." *1269 Hutcherson v. State, 677 So.2d 1174, 1201 (Ala.Crim.App.1994), rev'd on other grounds, 677 So.2d 1205 (Ala.1996). Clearly, Roberts's argument is without merit.

IV.
In reviewing the sentence of death as we are required to do by § 13A-5-53, we make the following findings: We have searched and found no error adversely affecting the rights of the defendant in the sentencing proceedings. Pursuant to Rule 45A, Ala.R.App.P., we have searched the entire proceedings under review and found no plain error or defect that has or probably has adversely affected any substantial right of the appellant.
However, out of an abundance of caution, we must remand this case once again for an amended sentencing order because the trial court's sentencing order implies that it found a nonstatutory mitigating circumstance, but it fails to specify that circumstance. The order states, in pertinent part:
"Having considered all of the statutory aggravating circumstances, and statutory mitigating circumstances, and the additional mitigating circumstance in evidence offered by the defendant, the court now finds and is convinced beyond a reasonable doubt that the aggravating circumstances as heretofore stated and brought before this court outweigh any mitigating circumstance as presented by the evidence."
(Emphasis added.)
As noted in the sentencing order, the trial court specifically found that none of the statutory mitigating circumstances specified in § 13A-5-51 existed. Thus, the implication, especially by the singular form of the word "circumstance," is that the trial court found and weighed a nonstatutory mitigating circumstance against the aggravating circumstances. Earlier in the sentencing order the trial court noted, "[T]he court was aware that the defendant suffered from a mental condition known as a personality disorder." We cannot determine from the sentencing order whether the trial court found the mental condition to be a nonstatutory mitigating circumstance.
Upon review of the entire record, we cannot determine what "circumstance" the trial court found in mitigation under § 13A-5-52. Without knowing what the trial court found in the way of mitigating circumstances, we cannot review the appropriateness of this sentence. In capital cases, it is the duty of this court to independently determine whether the sentence of death is appropriate in a particular case. In order to reach this conclusion, we must reweigh the aggravating circumstances and the mitigating circumstances as found by the trial court. See, Hooks v. State, 534 So.2d 329 (Ala.Crim.App.1987), aff'd, 534 So.2d 371 (Ala.1988), cert. denied, 488 U.S. 1050, 109 S.Ct. 883, 102 L.Ed.2d 1005 (1989); Guthrie v. State, 689 So.2d 935, 947 (Ala.Crim.App.1996). Accordingly, we must remand this case to the trial court for that court to enter into the record specific findings as to the existence or nonexistence of any nonstatutory mitigating circumstances that it may have considered in sentencing Roberts to death. Due return shall be made to this court within 28 days.
REMANDED WITH INSTRUCTIONS AS TO SENTENCING.
All the Judges concur.

ON SECOND RETURN TO REMAND
COBB, Judge.
On March 6, 1998, this Court remanded, for the second time, this cause to the trial court "for that court to enter into the record specific findings as to the existence or nonexistence of any nonstatutory mitigating circumstances that it may have considered in sentencing Roberts to death." Roberts v. State, 735 So.2d 1244, 1269 (Ala. Cr.App.1998). The trial court complied with those instructions and has amended *1270 the sentencing order to state that the trial court found no nonstatutory mitigating circumstances.
In reviewing the sentence of death, as we are required by § 13A-5-53, Ala.Code 1975, we have searched the record and found no error in the sentencing proceedings adversely affecting the rights of the appellant. Pursuant to Rule 45A, Ala. R.App.P., we have searched the entire proceedings under review and found no plain error or defect which has or probably has adversely affected any substantial right of the appellant.
The trial court found the existence of two aggravating circumstances: that the capital offense was committed by the defendant while he was under sentence of imprisonment, § 13A-5-49(1), Ala.Code 1975, and that the capital offense was committed during the commission of robbery in the first degree, § 13A-5-49(4), Ala. Code 1975.
The trial court found no statutory or nonstatutory mitigating circumstances.
The trial court's findings concerning the aggravating and mitigating circumstances are supported by the record.
This Court has determined that death is the proper sentence in this case. There is no indication that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor. Our independent weighing of the aggravating and mitigating circumstances indicates that death is the proper sentence. The sentence of death in this case is neither excessive nor disproportionate to the penalty imposed in similar cases, considering both the crime and the appellant.
The judgment of the circuit court is affirmed.
AFFIRMED AS TO SENTENCING.
LONG, P.J., and McMILLAN, BROWN, and BASCHAB, JJ., concur.
NOTES
[1] This rule sets out duties for the court reporter in addition to those established by § 12-17-275, Ala.Code 1975.
[2] This court reminds the trial court that § 13A-5-47(d), Ala.Code 1975, requires that the sentencing order contain written findings of fact in the sentencing order.
[*] Although Judge Jean Brown and Judge Pamela Baschab were not members of this court when this case was orally argued, they have listened to tapes of that argument.
[1] We note that the appellant's brief was filed with this Court before the United States Supreme Court's decision in Harris was issued.