[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1272 
David Lee Roberts was convicted of two counts of capital murder for the death of Annetra Jones, one count under § 13A-5-40(a)(2), Ala. Code 1975 — murder committed during the commission of a robbery — and one count under § 13A-5-40(a)(9) — murder committed during the commission of arson. By a vote of 7 to 5, the jury recommended that Roberts be sentenced to life imprisonment without parole; however, the trial court overrode that recommendation and sentenced Roberts to death by electrocution. In a unanimous decision, the Court of Criminal Appeals affirmed Roberts's conviction, but reversed his sentence because during the penalty phase of Roberts's trial the court had excluded hearsay evidence that was relevant to his attempt to prove the existence of two statutory mitigating circumstances. The Court of Criminal Appeals held that the excluded evidence might have altered the trial court's decision to override the jury's verdict. The Court of Criminal Appeals remanded the case for a new penalty-phase hearing before the trial court, instructing the trial court to weigh the aggravating and mitigating circumstances it found to exist, to determine Roberts's new sentence, and to prepare a new sentencing order. Roberts v. State, [Ms. CR-93-1766, May 23, 1997]735 So.2d 1244 (Ala.Crim.App 1997) ("Roberts I").
At the conclusion of the second penalty-phase hearing, during which the trial court allowed Roberts to present his mitigating evidence, the trial court stated that after it considered "all of the statutory aggravating circumstances and statutory mitigating circumstances, and the additional mitigating circumstances in evidence offered by the defendant," it concluded that the aggravating circumstances outweighed the mitigating circumstances. The court again overrode the jury's recommendation of life imprisonment without parole and sentenced Roberts to death. In another unanimous decision, the Court of Criminal Appeals, on March 6, 1998, again remanded the cause to the trial court, "for that court to enter into the record specific findings as to the existence or nonexistence of any nonstatutory mitigating circumstances that it may have considered in sentencing Roberts to death." 735 So.2d at 1266. (We will refer to the Court of Criminal Appeals' March 6, 1998, opinion as "Roberts II.")
On the second return to remand, the Court of Criminal Appeals, on May 8, 1998, found that the trial court had complied with its instructions and had amended the sentencing order to state that it found no nonstatutory mitigating circumstances. The Court of Criminal Appeals unanimously affirmed Roberts's death sentence, concluding that the trial court's findings concerning the aggravating and mitigating circumstances were supported by the record.[1] The Court of Criminal Appeals determined that the sentence was not the result of "passion, prejudice, or any other arbitrary factor"; that after independently weighing the aggravating and mitigating circumstances, it considered death was the proper sentence; and that the sentence was "neither excessive nor disproportionate" when compared to "the penalty imposed in similar cases, considering *Page 1273 
both the crime and the [defendant]." 735 So.2d at 1270. See §13A-5-53(b)(3), Ala. Code 1975. (We will refer to the Court of Criminal Appeals' May 8, 1998, opinion as "Roberts III.")
We granted certiorari review pursuant to Rule 39(c), Ala.R.App.P. We affirm Roberts's conviction and sentence.
 I.
In Roberts I, the Court of Criminal Appeals summarized the evidence presented at trial:
 "Roberts had been a houseguest of Wendell Satterfield. On April 22, 1992, Satterfield's girlfriend, Annetra Jones, was sleeping on a couch in Satterfield's den. Roberts left his job and went to Satterfield's residence around noon on that day. He packed his belongings, stole money from [Annetra Jones's] wallet, and shot her three times in the head with a .22 caliber rifle while she slept. Jones died within seconds. Roberts poured flammable liquid on her body and on the floor in the den [and] then set fire to a piece of paper he had placed under the couch. In the bedroom in which Roberts had stayed, which was in the basement of Satterfield's house, Roberts set another fire, causing major damage to the room and sending smoke throughout the house. Roberts left the house, taking with him a variety of items, such as the murder weapon and other guns. He hid this evidence, but later led the police to the hiding place."
735 So.2d at 1249.
After law-enforcement authorities questioned Roberts, he twice confessed to shooting Jones and to setting Satterfield's house on fire. In his first confession, on the afternoon of April 23, 1992, Roberts stated that on the night before the murder he had been smoking "some dope" and he and Satterfield had been drinking heavily. Roberts said that Satterfield told him that he (Satterfield) was going to "take care of his [Roberts's] daddy" unless Roberts helped him with something else. Roberts claimed Satterfield told him that he wanted Roberts to burn his house down and "take care" of Jones for him by shooting her with a double-barrel, 12-gauge shotgun. After talking with Satterfield a little more, Roberts said, he agreed to do it.
Roberts stated that he briefly spoke to Jones before he left for work on April 22 and that when he returned to the house around noon she was sound asleep. He stated that he packed his belongings, trying not to wake her, and took them out to his car. He then went back into the house, he said, and loaded the double-barrel shotgun, but he said he decided not to use it and, instead, took a .22 caliber automatic rifle from a cabinet, which he said he knew was already loaded. Roberts stated that he walked over to Jones and aimed the rifle at her ear, as he said Satterfield had told him to do, and that he shot her three times.
Afterwards, he said, he ran outside because he was scared and thought he was going to be sick. He stated that he went back inside, however, and found gasoline jugs where he said Satterfield had told him they would be left for him to use to start the fire. Roberts stated that he poured the gasoline around the house and directly on Jones's body because, he said, Satterfield had told him to make sure that the body could not be identified. Roberts stated that he then set a fire near the couch where Jones's body was lying and set another fire in the basement, as he said Satterfield had instructed. When he left the house, he said, he took two firearms with him and hid them in the woods. He also stated that it would be too difficult to try to tell the police exactly where the firearms were hidden, but that he knew how to get there.
In his second confession, given later in the evening on April 23, Roberts amended his story by stating that he set the house on fire in order to get back at Satterfield and to warn Satterfield to leave his (Roberts's) parents alone. When he entered *Page 1274 
Satterfield's house, he said, he noticed that Jones was asleep on the couch. He stated that before he shot her, he walked into Satterfield's bedroom and located Jones's purse, took $143 from it, then walked back out to the living room and picked up a 9mm pistol and stuck it in the waist of his pants. Roberts said that he then packed his belongings in his car, before he shot Jones and set the house on fire. He said that he had lied earlier when he said Satterfield had told him to burn the house, that he did not know Jones was going to be in the house, and that he did not know why he shot her, although he admitted he intended to shoot her once he saw that she was there.
Roberts has raised 22 issues, as well as numerous subissues, for us to review. The Court of Criminal Appeals addressed and correctly resolved these issues in its thorough and well-reasoned opinions. Only three issues warrant further discussion.
 II.
Roberts contends that the trial court erred in admitting into evidence two photographs of him in handcuffs. During the guilt phase of the trial, the State offered into evidence three photographs of Roberts, two of which depict him touching a rifle that is partially hidden in foliage covering the ground (Exhibits #64 and #65), and one of which shows him standing alone in a wooded area and facing the camera (Exhibit #68). Roberts is handcuffed in each photograph. The photographs were taken when, after Roberts had given his first confession, he took law-enforcement officers to the place where he had hidden the firearms he had taken from Satterfield's house. At trial, Roberts objected only on the ground that the photographs depicting him in handcuffs destroyed the presumption of innocence to which he was entitled. The trial court sustained the objection to the photograph showing Roberts standing alone, but admitted the two photographs showing Roberts touching the rifle.
As the Court of Criminal Appeals noted, the admissibility of a photograph showing a defendant in handcuffs is a question of first impression in Alabama. After reviewing cases from other jurisdictions that have allowed the admission of photographs showing a defendant in handcuffs or otherwise detained, the Court of Criminal Appeals held that the trial court properly admitted into evidence the two photographs of Roberts touching the rifle.
In Wiley v. State, 449 So.2d 756 (Miss. 1984), the Supreme Court of Mississippi held that a photograph showing the defendant in handcuffs and chains, pointing to a money bag he had discarded, had probative value because it corroborated the defendant's confession and showed his cooperation with law-enforcement officers. In State v. Barton, 335 N.C. 696, 441 S.E.2d 295 (1994), the Supreme Court of North Carolina upheld the admission of two photographs of the defendant in handcuffs; one of them showed him standing next to a sheriff's deputy and in the area where the victim's vehicle was located. The trial court in Barton found that the photographs aided law-enforcement officers in their testimony regarding the defendant's assistance in locating evidence, and the court gave limiting instructions to the jury. In Bryant v. State,705 S.W.2d 745 (Tex.App. 1986), the Texas Court of Appeals held that a photograph of a defendant who was being detained by officers next to their patrol car was properly admitted because it corroborated testimony regarding the defendant's appearance when he was arrested. In United States v. Mohammed, 27 F.3d 815 (2d Cir.), cert. denied, 513 U.S. 975 (1994), the United States Court of Appeals for the Second Circuit held that the trial court had properly admitted a photograph of a defendant wearing a black jacket and standing next to a jail cell. The Second Circuit concluded that the photograph corroborated testimony about what the defendant was wearing when he was arrested. *Page 1275 
Roberts argues that the Court of Criminal Appeals erred in concluding that the trial court properly admitted the two photographs because, he argues, the cases that court relied upon are distinguishable. The courts that have admitted such photographs have done so, he argues, only in conjunction with limiting instructions or testimony, or for use for a particular purpose. Roberts contends that the jury in his case received what he argues are highly prejudicial photographs and received them without any limiting instructions or testimony.
The general rule in Alabama regarding the admissibility of photographic evidence in a criminal case is that a photograph may be admitted "if it tends to prove or disprove some disputed or material issue, to illustrate some relevant fact or evidence, or to corroborate or dispute other evidence in the case." Ex parte Siebert, 555 So.2d 780, 783 (Ala. 1989), cert. denied,497 U.S. 1032 (1990). See also Ex parte Bankhead, 585 So.2d 112, 118 (Ala. 1991). The trial court has the discretion to determine whether a photograph should be admitted, and appellate review of that decision is confined to the question whether the trial court abused its discretion. Ex parte Trawick, 698 So.2d 162 (Ala. 1997).
The two photographs of Roberts retrieving evidence illustrated certain testimony of law-enforcement officers and corroborated Roberts's confession. In Roberts I, the Court of Criminal Appeals concluded:
 "Investigator C.J. Cox testified without objection that after Roberts was taken into custody, Roberts directed him and a law enforcement officer to the place in the woods where he had hidden the guns (State's Exhibit 49 and State's Exhibit 41) beneath some leaves. He also testified without objection that he photographed Roberts as he retrieved the guns, and he identified State's Exhibits 64 and 65 as those photographs.
 "Sergeant Ken Mays, an officer with the Department of Public Safety, testified about his interviews with Roberts, and read [to the jury] the statements Roberts had given during those interviews. . . . In his final statement, Roberts admitted that he had shot the victim and had hidden the guns; he could not describe the hiding place in the woods `because there ain't no directions on how to get there.' Sgt. Mays testified that after Roberts made this statement, he was placed in custody. Sgt. Mays also testified that Roberts took him and C.J. Cox to where he had hidden the weapons."
735 So.2d at 1251.
We agree with the Court of Criminal Appeals that the trial court did not abuse its discretion in admitting the two photographs of Roberts retrieving evidence, even though those photographs showed him to be handcuffed.[2] We are persuaded by the Court of Criminal Appeals' reasoning and that of the cases upon which it relied, that a photograph of a defendant in handcuffs or otherwise detained may be admitted into evidence so long as the photograph has probative value and is relevant. Under the facts of this case, no limiting instructions were necessary.
 III.
Roberts contends that the evidence is insufficient to support his convictions for the capital offenses of robbery-murder and arson-murder. More specifically, Roberts argues that the State failed to prove that he was guilty of either robbery or arson because, he argues, the "force" element of robbery was not established and the arson was a mere afterthought. *Page 1276 
 A.
In Hallford v. State, 548 So.2d 526 (Ala.Crim.App. 1988), aff'd, 548 So.2d 547 (Ala.), cert. denied, 493 U.S. 945 (1989), the Court of Criminal Appeals set forth the elements necessary to prove a defendant guilty of robbery-murder:
 "To sustain a conviction under § 13A-5-40(a)(2) for capital robbery-murder, the state must prove beyond a reasonable doubt: (1) a `robbery in the first degree or an attempt thereof,' as defined by § 13A-8-41; (2) a `murder,' as defined by § 13A-6-2(a)(1); and (3) that the murder was committed `during' the robbery or attempted robbery, i.e., that the murder was committed `in the course of or in connection with the commission of, or in immediate flight from the commission of' the robbery or attempted robbery in the first degree. . . . The capital crime of robbery when the victim is intentionally killed is a single offense beginning with the act of robbing or attempting to rob and culminating in the act of intentionally killing the victim; the offense consists of two elements, robbing and intentional killing. The intentional murder must occur during the course of the robbery in question; however, the taking of the property of the victim need not occur prior to the killing. While the violence or intimidation must precede or be concomitant with the taking, it is immaterial that the victim is dead when the theft occurs."
548 So.2d at 534 (citations omitted). Section 13A-8-41, Ala. Code 1975, which defines "robbery in the first degree," provides:
 "(a) A person commits the crime of robbery in the first degree if he violates Section 13A-8-43 and he:
 "(1) Is armed with a deadly weapon or dangerous instrument; or
"(2) Causes serious physical injury to another."
Section 13A-8-43, which defines "robbery in the third degree," provides:
 "(a) A person commits the crime of robbery in the third degree if in the course of committing a theft he:
 "(1) Uses force against the person of the owner or any person present with intent to overcome his physical resistance or physical power of resistance; or
 "(2) Threatens the imminent use of force against the person of the owner or any person present with intent to compel acquiescence to the taking of or escaping with the property."
The commentary to the robbery statute explains how the statute broadens the scope of robbery:
 "There should be no distinction between cases in which force is used to gain possession of another's property and cases in which possession is gained and then force is used to retain possession. . . . In either situation the conduct is dangerous to human life. The expansion [to include use or threat of force in escaping], of course, is limited to threats and assaults to effect an immediate escape. A successful theft followed by the use of force to resist apprehension later would not constitute robbery."
Commentary to §§ 13A-8-40 to -44, Ala. Code 1975.
Although a taking of property committed after a murder and as a "mere afterthought" and unrelated to the murder will not sustain a conviction under § 13A-5-40(a)(2) for the capital offense of robbery-murder, see Bufford v. State, 382 So.2d 1162 (Ala.Crim.App.), cert. denied, 382 So.2d 1175 (Ala. 1980), the question of a defendant's intent at the time of the commission of the crime is generally an issue for the jury to decide. Crowe v. State, 435 So.2d 1371, 1379
(Ala.Crim.App 1983). This Court held in Cobern v. State, 273 Ala. 547,142 So.2d 869 (1962), that the fact that the victim was dead at the time the property was taken would not absolve a defendant of a charge of robbery if the intervening time between the murder and the taking of the property was such as to *Page 1277 
permit the jury to find that the murder and the taking were links in a continuous chain of events. See Thomas v. State, 460 So.2d 207
(Ala.Crim.App. 1983), aff'd, 460 So.2d 216 (Ala. 1984). To hold any other way "would be tantamount to granting to would-be robbers a license to kill their victims prior to [taking their property,] in the hope of avoiding prosecution under the capital felony statute." 460 So.2d at 212. Roberts contends that in this case there was no robbery because he did not use force to enter the house and did not use force to take the money from the victim because she remained asleep throughout the taking, and because in the time intervening between the taking and the murder he took all of his belongings out to his car, thus breaking the chain of events that otherwise would have connected the taking and the murder.
The Court of Criminal Appeals concluded that "the jury could easily have found beyond a reasonable doubt that the robbery and the murder were related events, and that Roberts intended to murder the victim when he committed the robbery [i.e., when he took her money]." Roberts I, 735 So.2d at 1264. Although Roberts did not testify at trial, his confessions to law-enforcement authorities and his interviews with police were admitted into evidence. If the jurors believed Roberts's first confession, then they reasonably could have inferred that the murder and arson were planned in accordance with Satterfield's instructions and that Roberts formed his intention to steal the victim's money after he entered the house shortly before the murder.
This state of the record would, taken alone, support the conviction; however, the record supports an alternative rationale, equally logical, for upholding the robbery-murder conviction. If the jurors believed Roberts's second confession, in particular his statement that he did not know Annetra Jones was going to be in the house and that he acted to take revenge on Satterfield, then they reasonably could have inferred that Roberts committed the murder during the course of taking the victim's money and that, because she was asleep, he had no reason to shoot her other than to assure that she did not wake up and thwart his plans.
The State had the burden of proving beyond a reasonable doubt that Roberts killed the victim during a robbery in the first degree. § 13A-5-40(a)(2), Ala. Code 1975. Section 13A-5-39(2) defines "during" as "in the course of or in connection with the commission of, or in immediate flight from the commission of the underlying felony or attempt thereof." The Court of Criminal Appeals has stated that "[e]ven had the [defendant] killed the victim for some purpose unrelated to the theft, the taking of property from the victim after the murder constitutes robbery, as the murder and the subsequent taking of the property formed a continuous chain of events." Johnson v. State, 479 So.2d 1377,1380 (Ala.Crim.App. 1985). See also Clark v. State, 451 So.2d 368
(Ala.Crim.App.), cert. denied, 451 So.2d 368 (Ala. 1984). In Harris v. State, 671 So.2d 125 (Ala.Crim.App. 1995), the Court of Criminal Appeals sustained a capital-murder conviction where the defendant waited until the victim was asleep and then shot him and took his property. Under those facts, the court reasoned that the jury could have found beyond a reasonable doubt that the robbery was related to the murder and that when the murder occurred the defendant was intending to take the victim's property. The same reasoning applies in this case. The jury could have found that, even if Roberts killed the victim for some purpose unrelated to the theft, the taking of property from her immediately before the murder constituted robbery, because the taking of the property and the subsequent murder formed a continuous chain of events.
 B.
Even if we assume, arguendo, that the State failed to prove a robbery, there *Page 1278 
is ample evidence from which the jury could have concluded that Roberts committed the capital offense of arson-murder. Arson-murder is defined in § 13A-5-40(a)(9), Ala. Code 1975: "Murder by the defendant during arson in the first or second degree committed by the defendant. . . ." Roberts contends that there is little, if any, evidence that at the time he committed the murder he intended to commit arson, and that the arson was a "mere afterthought."
The Court of Criminal Appeals concluded that "[t]he jury could easily have found beyond a reasonable doubt that the arson and the murder were part of a continuous chain of events, and that the arson was not a mere afterthought." Roberts I, 735 So.2d at 1264. If the jurors believed Roberts's first confession, then they reasonably could have inferred that his acts were all part of a plan and that Satterfield had instructed him to kill Annetra Jones and then set the house on fire so that her body could not be identified. Once again, we have a second theory to support the conviction, even though the first, standing alone, supports it. If the jurors believed Roberts's second confession, then they reasonably could have inferred that, because Roberts set fire to Annetra Jones's body within minutes of shooting her, he did so in an attempt to cover up the murder.
Where two offenses are inextricably interwoven, they are said to be part of the res gestae. Smith v. State, 588 So.2d 561, 577
(Ala.Crim.App. 1991). The jury could have found that the murder and the arson were part of a continuous chain of events and that Roberts committed the murder "in the course of or in connection with the commission of, or in immediate flight from the commission of," arson. See § 13A-5-39(2), Ala. Code 1975.
 C.
"The weight and probative value to be given to the evidence, the credibility of the witnesses, the resolution of conflicting testimony, and inferences to be drawn from the evidence are for the jury." Smith v. State, 698 So.2d 189, 214 (Ala.Crim.App. 1996), aff'd, 698 So.2d 219 (Ala.), cert. denied, ___ U.S. ___,118 S.Ct. 385 (1997). The courts of this state will not set aside a verdict of conviction on the ground of the alleged insufficiency of the evidence unless the preponderance of the evidence against the verdict is so decisive that the court is convinced that the verdict is unjust. Ex parte Land, 678 So.2d 224, 237 (Ala.), cert. denied, 519 U.S. 933, 117 S.Ct. 308 (1996). In considering the sufficiency of the evidence to support a conviction, a court reviews the evidence in the light most favorable to the State. Id. Accordingly, we agree with the Court of Criminal Appeals that the State presented sufficient evidence to support both capital murder charges and that the jury's verdicts of conviction are supported by evidence from which the jury could have found Roberts guilty beyond a reasonable doubt.
 D.
Roberts contends that the trial court erred when, during the guilt phase of his trial, it instructed the jury that, even if he was convicted of both capital murder charges, he would be punished for only one. As the Court of Criminal Appeals noted, at trial Roberts did not object to this charge, and his failure to object weighs heavily against his claim of prejudice. See Boyd v. State,715 So.2d 825 (Ala.Crim.App. 1997), aff'd, 715 So.2d 852
(Ala.), cert. denied, ___ U.S. ___, 119 S.Ct. 416 (1998). The trial court imposed one sentence of death by electrocution, a sentence referable to both the robbery-murder charge and the arson-murder charge. We are not confronted here with a general verdict on multiple counts, the sufficiency of the evidence as to each count having been attacked by a proper motion and the claim on appeal being the submission of both good and bad counts to the jury. See, e.g., *Page 1279 
Worrell v. State, 357 So.2d 373, 376 (Ala.Crim.App. 1978). Here we have separate counts, separate verdicts, and a single sentence. Under these circumstances, even if we assumed that one of the two counts was deficient, the verdict and judgment of guilt on the charge sustained by the proof would stand, and the other conviction would be sufficient to support the death sentence. Ex parte McWilliams, 640 So.2d 1015, 1022 (Ala. 1993); Harris v. State, 356 So.2d 247 (Ala.Crim.App. 1978).
 IV.
Roberts contends that at the penalty phase of his trial the court improperly excluded testimony Roberts sought to introduce regarding the mitigating circumstances of extreme mental or emotional distress and substantial domination by another person. § 13A-5-51(2) and (5), Ala. Code 1975. The court precluded Terry Roberts, the defendant's brother, from testifying about conversations he had had with his brother about threats on their father's life, his brother's nightmares, his brother's fear of Satterfield, and Satterfield's personality. The court precluded Brenda Roberts, the defendant's mother, from testifying about dreams her son had discussed with her.
Even though the trial court followed the Court of Criminal Appeals' mandate to conduct a new penalty-phase hearing in Roberts's case and to allow him to introduce all relevant mitigating evidence, Roberts contends that he is entitled to another penalty-phase hearing. The crux of Roberts's argument is that the Court of Criminal Appeals should have remanded the case for a new penalty-phase hearing before a jury, and not merely before the trial court. Roberts contends that although the jury voted 7 to 5 for a sentence of life imprisonment without parole, its vote might have been even stronger in his favor if the jury had heard the excluded evidence, and thus might have persuaded the trial court to accept the jury's sentencing recommendation.
In Harris v. Alabama, 513 U.S. 504 (1995), the United States Supreme Court held that "the Eighth Amendment does not require the State to define the weight the sentencing judge must accord an advisory jury verdict." 513 U.S. at 512. See also Scott v. State, [Ms. CR-94-0763, January 17, 1997] 728 So.2d 164 (Ala.Crim.App 1997), aff'd, [Ms. 1961460, March 20, 1998] 728 So.2d 172 (Ala. 1998). Roberts does not cite any authority, nor have we been able to find any, for the proposition that if an appellate court remands a case for a new penalty-phase hearing, that hearing must be conducted before a jury, not before the trial court only. This Court has held that if a trial court discovers that an aggravating circumstance on which the jury was instructed was invalid, it cannot cure that error merely by reweighing the remaining aggravating and mitigating evidence. Ex parte Williams,556 So.2d 744 (Ala. 1987). In Williams, however, the jury recommended a death sentence after considering invalid aggravating circumstances. The jury in Roberts's case recommended the lesser sentence of life imprisonment, even without hearing the additional mitigating evidence Roberts sought to introduce. Even if Roberts's jury had voted 12-0 to recommend a sentence of life imprisonment after it heard Roberts's mitigating evidence, the trial judge remains under the duty to make a separate review of the evidence and to make his or her own decision. § 13A-5-47(3), Ala. Code 1975. The trial court must consider the jury's sentencing recommendation, but that recommendation is not binding. Id.
 V.
We have carefully reviewed all of the issues presented in Roberts's petition, in the parties' briefs, and at oral argument. We have examined the opinion of the Court of Criminal Appeals and have exhaustively searched the record for plain *Page 1280 
error. We find no error, plain or otherwise, in either the guilt phase or the penalty phase of Roberts's trial that would warrant a reversal of his convictions or his sentence. We therefore affirm the judgment of the Court of Criminal Appeals.
AFFIRMED.
Hooper, C.J., and Maddox, Houston, Cook, and See, JJ., concur.
Brown, J., recuses herself.
[1] The trial court found two aggravating circumstances: that Roberts committed the capital offense while he was under a sentence of imprisonment, § 13A-5-49(1), Ala. Code 1975; and that Roberts committed the capital offense during the commission of robbery in the first degree, § 13A-5-49(4). The trial court found no statutory or nonstatutory mitigating circumstances.
[2] We find it significant, as did the Court of Criminal Appeals, that the trial court exercised its discretion to exclude the photograph of Roberts simply standing handcuffed in the woods.
 *Page 364