776 So.2d 203 (2000)
Ex parte David FREEMAN.
(In re David Freeman v. State.)
1981565.
Supreme Court of Alabama.
March 10, 2000.
Opinion on Denial of Rehearing May 26, 2000.
Thomas M. Goggans, Montgomery, for petitioner.
Bill Pryor, atty. gen., and Kathryn D. Anderson, asst. atty. gen., for respondent.
LYONS, Justice.
David Freeman was convicted of six counts of capital murder, all six counts related to the murders of Sylvia Gordon and Mary Gordon. Count one charged Freeman with the murder of two or more persons by one act or pursuant to one scheme or course of conduct. See § 13A-5-40(a)(10), Ala.Code 1975. Counts two and three charged Freeman with murder during a burglary in the first degree. See § 13A-5-40(a)(4). Counts four and five charged Freeman with murder during a robbery in the first degree. See § 13A-5-40(a)(2). Count six charged Freeman with the murder of Mary Gordon during a rape in the first degree. See § 13A-5-40(a)(3).
*204 In August 1989, a jury found Freeman guilty on all six counts of capital murder and recommended, by a vote of 11-1, that the trial court sentence Freeman to death; the court did sentence him to death. However, on direct appeal, the Court of Criminal Appeals reversed Freeman's convictions and remanded the cause for a new trial, holding that the prosecution had used its peremptory strikes discriminatorily, in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). See Freeman v. State, 651 So.2d 573 (Ala. Crim.App.1992), rev'd on return to remand, 651 So.2d 576 (Ala.Crim.App.1994).
In his second trial, Freeman did not deny that he murdered Mary and Sylvia Gordon, but, instead, alleged that he had been unable to conform his conduct to the requirements of the law because of a mental disease or defect. Freeman was again convicted on all six counts, and the jury recommended the death penalty, by a vote of 11-1. The trial court, after weighing the aggravating and mitigating factors, accepted the jury's recommendation and sentenced Freeman to death by electrocution. The Court of Criminal Appeals affirmed the convictions and the sentence. See Freeman v. State, 776 So.2d 160 (Ala.Crim. App.1999). This Court granted Freeman's petition for certiorari review and heard oral arguments. We affirm the judgment of the Court of Criminal Appeals.
On March 11, 1988, Deborah Gordon picked up her 17-year-old sister Sylvia from school and they returned home. Freeman was waiting on the porch when the two girls arrived. He had arrived at the house after an hour-long bicycle ride. He had recently met the Gordon family and had developed a romantic interest in Sylvia. After eating her lunch, Deborah went to work and left her sister Sylvia and Freeman sitting on the couch.
Later that afternoon, Freeman gave Sylvia a note stating that he loved her and did not want to lose her. Sylvia, in return, gave Freeman a note stating that she viewed their relationship as a friendship and that she did not want to have a serious relationship with him. Deborah testified at trial that Sylvia had planned to tell Freeman that day that she did not wish to see him anymore.
Around 1:00 a.m. the next morning, Deborah Gordon returned to find that her sister Sylvia and her mother, Mary, had been killed. Sylvia's body was found on her bed; the only clothes on her body were a T-shirt and socks. Her jeans and underwear had been cut off her body and she had been stabbed 22 times. An autopsy determined that she had bled to death as a result of her stab wounds, although none of the stab wounds would have been, by itself, fatal. Experts testified that she had remained conscious for approximately eight minutes after the first wounds were inflicted and that some of her wounds were defensive in nature. Mary Gordon's body was found on her bedroom floor. Her jeans and underwear had been cut from her body. She had been raped and stabbed 14 times; two of the stab wounds would have been fatal.
Upon leaving the Gordon home, Freeman took the Gordons' automobile and drove around for some time. He abandoned the car in a parking lot near his apartment; he then changed clothes and telephone for a taxi to take him to the truck stop where he worked. The next morning, Freeman was questioned by the police and arrested.
Initially, Freeman denied any knowledge of the killings, but he later gave a statement admitting to stabbing the mother. However, Freeman declared that he "got dizzy" and blacked out during the course of the killings and could not remember specific details.
In late 1988 and early 1989, Freeman was given a mental evaluation by the staff at Taylor Hardin Secure Medical Facility. Three psychologists, working independently, found that Freeman did not suffer from any mental disease or defect that *205 would cause him to lack the substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. In 1995, he was evaluated by Dr. Guy Renfro, a forensic psychologist, who agreed with the earlier assessment of Freeman's mental state.
Freeman raises the same issues in his certiorari petition that he raised before the Court of Criminal Appeals. The opinion of the Court of Criminal Appeals provides a thorough treatment of the facts of this case, and it correctly disposes of each issue raised by Freeman in his petition.
Because this is a death-penalty case, this Court must, under Rule 39(k), Ala. R.App. P., review the record for plain error, i.e., any "error [that] has or probably has adversely affected the substantial rights" of the defendant.
"Our review of a death penalty case requires us to address any plain error or defect found in the proceeding under review, even if the error was not brought to the attention of the trial court. Rule 39(k), Ala. R.App. P. `"`Plain error' only arises if the error is so obvious that the failure to notice it would seriously affect the fairness or integrity of the judicial proceedings."' Ex parte Womack, 435 So.2d 766, 769 [(Ala.1983)], cert. denied, 464 U.S. 986, 104 S.Ct. 436, 78 L.Ed.2d 367 (1983), quoting United States v. Chaney, 662 F.2d 1148, 1152 (5th Cir.1981). This Court will take appropriate action when the error `has or probably has' substantially prejudiced the defendant. Rule 39(k), Ala. R.App. P."
Ex parte Jackson, 672 So.2d 810, 811 (Ala. 1995), cert. denied, 517 U.S. 1247, 116 S.Ct. 2505, 135 L.Ed.2d 195 (1996). We have reviewed the proceedings for plain error and have found none.
As required by § 13A-5-53(a), Ala. Code 1975, we have "review[ed] the propriety of the death sentence" in this case. Our review convinces us (1) that the sentence imposed upon Freeman was not "imposed under the influence of passion, prejudice, or any other arbitrary factor"; (2) that "an independent weighing of the aggravating and mitigating circumstances at the appellate level indicates that death was the proper sentence"; and (3) that Freeman's sentence of death is not "excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." § 13A-5-53(b)(1), (2), and (3). See Ex parte Maples, 758 So.2d 81 (Ala.1999) (murder made capital because two or more persons were murdered pursuant to one scheme or course of conduct); Ex parte Roberts, 735 So.2d 1270 (Ala.1999) (murder made capital because it occurred during a robbery); Neal v. State, 731 So.2d 609 (Ala.Crim. App.1997), aff'd, 731 So.2d 621 (Ala.1999) (murder made capital because it occurred during a burglary); Brooks v. State, 695 So.2d 176 (Ala.Crim.App.1996), aff'd, 695 So.2d 184 (Ala.1997), cert. denied, 522 U.S. 893, 118 S.Ct. 233, 139 L.Ed.2d 164 (1997) (murder made capital because it occurred during a rape).
Having considered the record, together with the petition and the briefs and the arguments of counsel, this Court concludes that the judgment of the Court of Criminal Appeals must be affirmed.
AFFIRMED.
HOOPER, C.J., and MADDOX, HOUSTON, COOK, SEE, BROWN, and ENGLAND, JJ., concur.
JOHNSTONE, J., concurs in part and dissents in part.
JOHNSTONE, Justice (concurring in part and dissenting in part).
I concur in the convictions for both murders on all theories except the theory of burglary-murder. The location element of burglary traditionally required proof of a breaking and entering. In enacting § 13A-7-5, Ala.Code 1975, the legislature added unlawfully remaining as an alternative for the location element. I know from my service in the Alabama House of Representatives *206 when that language originated that the legislature intended for this new alternative to reach only clandestine remaining that is hiding inside the premises to await an opportune time to commit the intended crime. Ex parte Gentry, 689 So.2d 916 (Ala.1996), respected this limitation. Davis v. State, 737 So.2d 480 (Ala. 1999), in overruling Gentry and eliminating this limitation, exceeds the intent of the legislature and violates the rule that criminal statutes be strictly construed against the State. The Davis rule will allow burglary convictions of unruly guests in fact scenarios never contemplated by the legislature as burglaries. We should return to the faithful Gentry interpretation.
A particular observation is appropriate in support of the convictions on the theory of robbery-murder. While the petitioner argues that his stealing the car was a mere afterthought, his statement to the police belies this argument. Referring to a time after he had finished stabbing both of the victims, he stated:
"I got cut on my right hand so I wrapped a handkerchief around my hand to stop the bleeding then when I came out of the bathroom I saw both of them trying to get to the phone so I ran over and got all of the phones off the walls then I waited until I knew they weren't going anywhere before I got the car keys."
This statement implies that the petitioner was contemplating the theft of the car while he waited to learn whether he needed to apply still more force to the victims in order to steal the car. The opinion of the Court of Criminal Appeals recites this portion of the petitioner's statement, but only in a portion of the opinion discussing the burglary-murder theory as distinguished from the robbery-murder theory.
Changing the subject, I will note that this Court has not examined the petitioner's double-jeopardy claims because a majority deems that the death penalty renders the double-jeopardy issue academic if not moot. Our affirmance in this case should not be construed as any modification of or retreat from Ex parte Rice, 766 So.2d 143 (Ala.1999).
The death penalty is appropriate in this case regardless of the disposition of the burglary-murder theory. Thus I concur with the main opinion in its affirmance of the death penalty for each of the two murders.

On Application For Rehearing
LYONS, Justice.
APPLICATION OVERRULED.
HOOPER, C.J., and MADDOX, HOUSTON, COOK, SEE, BROWN, and ENGLAND, JJ., concur.
JOHNSTONE, J., concurs in part and dissents in part.
JOHNSTONE, Justice (concurring in part and dissenting in part).
I concur to overrule in all respects, except that I would grant as to the convictions on the theory of burglary-murder.