[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1157 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1158 
 On Remand from the Alabama Supreme Court
Antywan Develle Wilson was convicted of robbery in the first degree, a violation of § 13A-8-41, Ala. Code 1975, and attempted murder, a violation of §§ 13A-4-2 and 13A-6-2, Ala. Code 1975. He was sentenced to 30 years' imprisonment on each conviction. His codefendant, Trumaine Arrington, was also convicted of both charges and was also sentenced to 30 years' imprisonment on each conviction. On original submission of this appeal, this Court reversed Wilson's convictions, addressing only one of the four grounds raised in Wilson's appeal. Wilson v. State, [Ms. CR-00-1003, April 26, 2002] 874 So.2d 1145 (Ala.Crim.App. 2002). The Alabama Supreme Court reversed our decision. Wilson v. State, [Ms. 1020014, June 13, 2003] 874 So.2d 1145 (Ala. 2003). In this opinion on remand from the Alabama Supreme Court, we address the remaining issues Wilson raised in his original submission. The facts of the case were fully set out in our original opinion; we need not repeat them here.
In Wilson's original appeal, he raised four grounds for reversal. First, Wilson argued that the trial judge committed reversible error when he denied his motion for a mistrial based upon the suppression of certain witness statements. We agreed with Wilson and reversed the trial court's judgment and remanded the case for a new trial. The Alabama Supreme Court then reversed our judgment and remanded the case for this Court to address the remaining three grounds. Wilson's second argument is that he was denied a fair trial because of prosecutorial misconduct. Wilson's third argument is that the judge allowed inadmissible evidence, which was prejudicial, and that the admission of that evidence denied him due process of the law. Wilson's fourth argument is that the State failed to present sufficient evidence by which a jury could reasonably convict him.
 I.
Wilson alleges that misconduct on the part of the assistant district attorney trying the case denied him a fair trial. He claims that the district attorney withheld eyewitness statements that were exculpatory and that the district attorney made inflammatory and prejudicial statements during his closing argument.
 A.
Wilson alleges that the prosecutor's withholding of possibly exculpatory material during his two trials[1] denied him a fair trial. Specifically, Wilson claims that the district attorney did not disclose statements made to Det. Corey Hardiman by three witnesses who could have exonerated Wilson and Arrington. Although Wilson was given the names of the witnesses during the discovery phase, he did not know the full extent of their statements to Det. Hardiman, an investigating officer for the case. Wilson tried to contact the witnesses, but succeeded only in contacting *Page 1159 
one of the witnesses, Dalanda Smith. She testified at his second trial.
On this issue, the Supreme Court stated in Wilson v. State, [Ms. 1020014, June 13, 2003], 874 So.2d 1145, 1154 (Ala. 2003):
 "Considering that the nondisclosed evidence was presented to the jury even before the contents of Det. Hardiman's notes were revealed to the defense; that the contents of the notes were presented to the jury in their entirety despite their hearsay nature; that live testimony of one of the three witnesses was also presented to the jury; that Wilson's counsel expended a great deal of effort to find those witnesses even without Det. Hardiman's notes; and that the defense was unable to locate those witnesses even after possessing the notes, this Court finds that there was not a `reasonable probability that, had [Det. Hardiman's notes] been disclosed to the defense [earlier], the result of the proceeding would have been different.' [United States v.] Bagley, 473 U.S. [667] at 682. Consequently, there was no Brady [v. Maryland, 373 U.S. 83 (1963),] violation, and Wilson's convictions should not have been overturned on this basis. The judgment of the Court of Criminal Appeals is reversed and the cause is remanded for further proceedings consistent with this opinion."
Wilson, 874 So.2d at 1154.
The Supreme Court found no Brady v. Maryland, 373 U.S. 83 (1963), violation because through the corrective actions of the trial court "Wilson was able to present to the jury the information that three witnesses had named two other men as the perpetrators of the crime, and the witnesses who were not located were not subject to cross-examination by the State." Wilson, 874 So.2d at 1151.
 "[C]laims of prosecutorial misconduct are subject to a harmless error analysis. Smith v. State, 698 So.2d 189, 203 (Ala.Cr.App. 1996), aff'd, 698 So.2d 219 (Ala. 1997); Bush v. State, 695 So.2d 70, 131 (Ala.Cr.App. 1995), aff'd, 695 So.2d 138 (Ala. 1997). `In order for a constitutional error to be deemed harmless under Chapman [v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)], the state must prove beyond a reasonable doubt that the error did not contribute to the verdict. In order for the error to be deemed harmless under Rule 45 [Ala.R.App.P.] the state must establish that the error did not injuriously affect the appellant's substantial rights.' Coral v. State, 628 So.2d 954, 973 (Ala.Cr.App. 1992), aff'd, 628 So.2d 1004 (Ala. 1993), cert. denied, 511 U.S. 1012, 114 S.Ct. 1387, 128 L.Ed.2d 61 (1994)."
Bryant v. State, 727 So.2d 870, 876 (Ala.Crim.App. 1998).
The Supreme Court held that because Wilson had presented the testimony of one of the witnesses, he was able to present testimony regarding the existence of two other possible perpetrators. Also, the Court stated that "the difficulty in locating [the three witnesses] and getting them to testify was precisely the reason the trial court chose to fashion the remedy it did." Wilson, 874 So.2d at 1152. The jury had an opportunity to weigh the evidence of possible other perpetrators through the testimony of Det. Hardiman and Dalanda Smith. Therefore, the prosecutor's failure to produce certain statements was harmless error that did not "injuriously affect the appellant's substantial rights." Coral v. State,628 So.2d 954, 973 (Ala.Crim.App. 1992), aff'd, 628 So.2d 1004 (Ala. 1993).
In Hendrix v. State, 589 So.2d 769 (Ala.Crim.App. 1991), the appellant alleged *Page 1160 
that the prosecutor failed to provide him with the names of six other possible suspects in the incidents for which he was charged. Once the appellant learned of the other possible suspects, he "conducted a very thorough and sifting cross-examination of Investigator Lackey concerning these individuals." 589 So.2d at 771. This Court held that the prosecutor did not withhold any evidence.
 "We also note that even if the evidence had been suppressed, the appellant failed to show that the evidence was material to his case. '[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" 589 So.2d at 771 (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)).
Like the case at hand, the appellant in Hendrix had an opportunity to question the investigating officers about the other possible suspects. This sufficed to make the jury aware of the possibility of other suspects.
In the present case, Wilson was able to question Det. Hardiman in the same manner and without the restraints imposed by the rule against hearsay evidence. Wilson attempted to locate the three witnesses, but was only able to locate Smith. It is also important to note that Wilson knew the names of the witnesses before his first trial, and between then and his second trial he could locate only Smith. Therefore, "[o]ur review of the record leads us to conclude that even if the evidence of these other suspects was suppressed, there was no reasonable probability that the timely disclosure of this evidence would have affected the outcome of the trial." Hendrix, 589 So.2d. at 771.
 B.
Wilson also claims that the district attorney made several inflammatory and prejudicial remarks during his closing arguments.
 "'"This court has stated that '[i]n reviewing allegedly improper prosecutorial comments, conduct, and questioning of witnesses, the task of this court is to consider their impact in the context of the particular trial, and not to view the allegedly improper acts in the abstract.' Bankhead v. State, 585 So.2d 97, 106 (Ala.Crim.App. 1989), remanded on other grounds, 585 So.2d 112 (Ala. 1991), aff'd on return to remand, 625 So.2d 1141 (Ala.Crim.App. 1992), rev'd on other grounds, 625 So.2d 1146 (Ala. 1993). See also Henderson v. State, 583 So.2d 305
(Ala. 1991), cert. denied, 503 U.S. 908, 112 S.Ct. 1268, 117 L.Ed.2d 496 (1992). `In judging a prosecutor's closing argument, the standard is whether the argument "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Bankhead, 585 So.2d at 107, quoting Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). `A prosecutor's statement must be viewed in the context of all of the evidence presented and in the context of the complete closing arguments to the jury.' Roberts v. State, [735 So.2d 1244
(Ala.Crim.App. 1997)], aff'd, [735 So.2d 1270 (Ala.), cert. denied, 538 U.S. 939, 120 S.Ct. 346, 145 L.Ed.2d 271 (1999)]. Moreover, `statements of counsel in argument to the jury must be viewed as delivered in the heat of debate; such statements are usually valued by the jury at their true worth and are not expected to become factors in the formation of the verdict.' Bankhead, 585 So.2d at 106. `Questions of the propriety *Page 1161 
of argument of counsel are largely within the trial court's discretion, McCullough v. State, 357 So.2d 397, 399 (Ala.Crim.App. 1978), and that court is given broad discretion in determining what is permissible argument.' Bankhead, 585 So.2d at 105. We will not reverse the judgment of the trial court unless there has been an abuse of that discretion. Id."'
 "Taylor v. State, 808 So.2d 1148, 1185-86
(Ala.Crim.App. 2000), aff'd, 808 So.2d 1215 (Ala. 2001), quoting Freeman v. State, 776 So.2d 160, 184
(Ala.Crim.App. 1999), aff'd, 776 So.2d 203 (Ala. 2000), cert. denied, 531 U.S. 966 (2000). See also Reeves v. State, [Ms. CR-98-0777, August 25, 2000] 807 So.2d 18, 45 (Ala.Crim.App. 2000)."
McNabb v. State, [Ms. CR-98-0967, October 26, 2001] ___ So.2d ___, ___ (Ala.Crim.App. 2001).
Because Wilson's arguments concerning all the comments were properly preserved at the trial court level, we will address each in turn.
 1.
First, Wilson argues that the prosecutor made improper remarks concerning certain actions of his codefendant. During his closing argument, the district attorney stated that Wilson's codefendant, Arrington, "sold drugs out there." (R. 485). Wilson contends that this was said for the purpose of inflaming the jury, and, additionally, that the statement was improper as illegal character evidence under Rule 404(b), Ala. R. Evid.
Although we conclude that this comment overstated the evidence, we also conclude, in light of all the evidence, that this comment was not prejudicial to Wilson.
Wilson testified that he had personally bought marijuana from a street corner the day the shooting occurred. (R. 380). Wilson also testified that he was smoking marijuana on the night the incident occurred. (R. 380.) He further stated that he drove on the interstate from Birmingham to the Tuscaloosa exit while smoking the marijuana with Arrington and another witness. (R. 380.) A defense witness testified that she was with the defendants on the night in question. She stated that they were driving along the interstate smoking marijuana together. (R. 359.) Therefore, there was ample evidence presented from which the jury could infer that Wilson bought and used drugs. There was also evidence presented that Arrington used drugs. Therefore, the comment made by the prosecutor was not made to inflame the jury, but rather was his recounting the evidence presented. Furthermore, the trial judge reminded the jurors that they should rely on their independent recollection of the evidence in deciding the outcome of the case. Because we cannot find that this comment prejudiced Wilson, reversal is not proper.
 2.
Second, Wilson claims that the prosecutor made several comments to inflame the jury into rendering a guilty verdict. During the prosecutor's closing argument, the following exchange took place:
 "[Prosecutor:] . . . . If you want to let it go on, if you want to let it go on, you just cut them loose.
"[Wilson's counsel:] Objection, Your Honor, improper argument.
"The Court: Overruled.
 "[Prosecutor:] You cut them loose. I'll pick up the next case. But, I'm telling you, you've heard this evidence. If you want these thugs to keep killing people out there, you let them do it. I say you're not going to stand for it. It's your community. It is not Mr. Wilson's community and it is not Mr. Arrington's *Page 1162 
community when they break the law like they did. It's your community. You want them to keep doing it, you let them keep doing it. I'll just go on to the next case. I've got 600 cases sitting downstairs waiting to try.
 "[Wilson's counsel:] Objection, Your Honor. He's arguing facts not in evidence.
"The Court: I'll sustain as to that."
(R. 482-83.)
Wilson claims that although the judge sustained his objection, the comment was not based upon legitimate inferences from the evidence. He claims that by referring to "killings," the prosecutor intended to inflame the jury against the defendants even though they had not killed anyone.
The following colloquy also took place:
 "[Prosecutor:] Like I said, Ms. Levert [an assistant district attorney] and I will go to the next case. If you want to turn him loose, you turn him loose. You are going to do an injustice to Mr. Hamilton [the victim], and you are going to do an injustice to Gate City [the housing project where the shooting took place], because unless somebody out there knows that these two men don't rule Gate City out there, you do.
 "[Wilson's counsel:] Objection. Your Honor, there is no testimony that these guys rule Gate City. He's just getting carried away.
"The Court: Overruled.
"[Arrington's counsel:] Add my objection.
 "[Prosecutor:] Unless you tell them that they don't rule Gate City, they don't rule it by fear, they don't come in here and manipulate —
"[Wilson's counsel:] Objection —
"[Arrington's counsel:] Same objection.
 "[Wilson's counsel:] — prejudice the jury by saying they rule Gate City by fear.
"The Court: Overruled.
"[Wilson's counsel:] Improper argument.
"The Court: Your time is up, Mr. Felton.
 "[Prosecutor:] Yes, sir. Unless you do that, it's going to continue. I ask you to find these people guilty of attempted murder, shooting and trying to kill Mr. Hamilton, and robbery, because they took his clothes by force, not —
"The Court: Mr. Felton, your time is up.
"[Prosecutor:] Yes, sir. Thank you. Find him guilty."
(R. 491-92.)
Wilson contends that the district attorney's argument was made only to inflame the jury.
"[S]tatements of counsel in argument to the jury must be viewed as delivered in the heat of debate . . . ." Bankhead v. State, 585 So.2d 97,106 (Ala.Crim.App. 1989), remanded on other grounds, 585 So.2d 112 (Ala. 1991), aff'd on return to remand, 625 So.2d 1141 (Ala.Crim.App. 1992), rev'd on other grounds, 625 So.2d 1146 (Ala. 1993). By their nature, closing arguments are impassioned pleas for justice, no matter what side the delivery is from. The jurors were informed that everything said in a closing argument was not evidence, and that they should not substitute the judgment of the prosecutor or defense attorney for their own.
In the context of this particular case, the prosecutor's comments were not made with the intention to inflame the jury. Rather, they were made in the heat of debate that surrounds every trial. The evidence showed that the defendant's family had threatened testifying witnesses. *Page 1163 
There was also testimony that Wilson's mother had telephoned witnesses and asked them to testify. Another identification witness at the trial changed his story from what he had told police earlier concerning Wilson. Therefore, the statements of the prosecutor do not form the basis for a misconduct claim that would warrant reversal; they were reasonable comments on the evidence presented during trial.
 3.
Wilson contends that the prosecutor argued facts not in evidence when he insinuated during closing arguments that Wilson and his family had coerced witnesses into testifying or not testifying.
In the first instance Wilson alleges was improper, the district attorney stated that the only reason one particular witness was called was "to show you what happened out there in that community." (R. 487.) This comment was referring to the defendant's use of intimidation to change a witness's testimony. In another instance, the prosecutor stated that another witness called to testify "got up here and she said just exactly what Mr. Wilson told her to say." (R. 488.) In a third instance, the prosecutor questioned a witness by asking her "did you know that [Wilson's] mother had been threatening the victims?" (R. 358.) During questioning of the victim, the prosecutor stated, "So, you also testified that his family had been threatening your family about you testifying; didn't you?" (R. 151.)
"A prosecutor's statement must be viewed in the context of all of the evidence presented and in the context of the complete closing arguments to the jury." Roberts v. State, 735 So.2d 1244, 1253 (Ala.Crim.App. 1997), aff'd., 735 So.2d 1270 (Ala. 1999). "The prosecution, as well as defense counsel, has the right to present its impressions from the evidence, and may argue every legitimate inference that can be reasonably drawn from the evidence." Smith v. State, 698 So.2d 189, 202
(Ala.Crim.App. 1996), citing Sanders v. State, 423 So.2d 348
(Ala.Crim.App. 1982).
The prosecutor's comments, taken as a whole, do not deprive Wilson of his due process rights. Wilson's first trial ended in a mistrial. This was his second trial. The victim testified that Wilson's family was threatening him and his family, and that he was afraid to testify. Other witnesses testified that they had been telephoned by Wilson's mother and asked to testify on Wilson's behalf. Another witness changed his testimony from previous conversations he had had with police concerning the identity of Wilson and Arrington. The district attorney was simply restating what witnesses had testified to. Therefore, the prosecutor's comments, when viewed in relation to the evidence, do not amount to misconduct.
 4.
Wilson also argues that the prosecutor's comment that "there is nobody named `B' or `Bouty Bouty'" was not based on facts in the evidence.[2]
(R. 490.) "'[T]he prosecutor, as well as defense counsel, has a right to present his impressions from the evidence, if reasonable, and may argue every legitimate inference.'" Reeves v. State, 807 So.2d 18, 45
(Ala.Crim.App. 2000), quoting Rutledge v. State, 523 So.2d 1087, 1100
(Ala.Crim.App. 1987), rev'd on other grounds, 523 So.2d 1118 (Ala. 1988). *Page 1164 
The prosecutor was only making inferences from his view of the evidence presented. The witnesses stated that they did not know the real names of "B" and "Bouty Bouty." They only knew that "B" and "Bouty Bouty" lived in Bessemer. Also, a police officer had testified that he could not find "B" or "Bouty Bouty," the person the three witnesses had told him committed the crimes. Because the real names of these alleged men were not known, they could not be found by the investigating officers. The three witnesses were the only ones to implicate someone other that Wilson and Arrington. When officers tried to talk with the witnesses again, they would not answer the door. Some of the witnesses had not given the investigating officers their real names or addresses. Therefore, they could not be contacted in order to be questioned further. Also, the victim identified Wilson in a photographic lineup and at trial as one of the men who had robbed and shot him. Because there was adequate evidence presented that shows that "B" and "Bouty Bouty" could not be found or that they even existed, and because the three witnesses implicating "B" and "Bouty Bouty" could not be found, the comments by the prosecutor did not rest upon evidence not presented to the jury. Therefore, in light of the evidence presented, the prosecutor's comments did not harm Wilson's rights and do not rise to the level of misconduct.
 5.
Wilson also alleges that the prosecutor made ad hominem arguments against trial counsel for both defendants. During his closing arguments, the prosecutor stated: "I don't know what Mr. Spencer would do and I don't know what Mr. Penick would do if they had five bullets in them [and] laying there on the ground. Would they be thinking about their own life and trying to live? Or would they be trying to tell — " (R. 476-77.)
The statement of the prosecutor was a reply-in-kind to the closing argument's of Wilson's counsel. In Wilson's closing argument, he made the statement, "And if he knew the person — don't you think that's the first thing the police are going to run up there and say, `Okay, who shot you?' If you knew the person, you're going to say, `Yes, Coon Dog shot me.'" (R. 468.)[3] He also said, "That's all he has to say. But he didn't say anything — no such thing." (R. 469.) In both comments, Wilson was noting that the victim did not tell police who had shot him and arguing that he should have even though he had been shot five times. Wilson made several statements during his closing argument regarding the victim's failure to identify the perpetrators as he lay in the street being tended to by emergency medical personnel.
"'[A] prosecutor has the right to "reply in kind" to statements made by defense counsel in the defense's closing argument.' Ex parte Musgrove,638 So.2d 1360, 1369 (Ala. 1993), cert. denied, Rogers v. Alabama, [513] U.S. [845], 115 S.Ct. 136, 130 L.Ed.2d 78 (1994)." Ex parte Taylor,666 So.2d 73, 88 (Ala. 1995). When the prosecutor made the statement Wilson alleges constitutes misconduct, he was replying to Wilson's argument that the victim should have told the police more as he was being attended to by the paramedics. This argument is proper as a reply-in-kind statement made to rebut Wilson's closing argument. Therefore, we find no misconduct on behalf of the prosecutor in making these statements.
 6.
Wilson's final argument is that the cumulative effect of the prosecutor's *Page 1165 
statements and conduct denied him a fair trial. Viewing the statements and conduct of the prosecutor as a whole and in the context of the trial, we cannot find that Wilson has been denied any rights. Because we have held that the failure to produce certain statements by the prosecutor was harmless error, and that the statements of the prosecutor do not rise to the level of misconduct, we find that there was no cumulative prejudicial effect that denied Wilson a fair trial.
 "As we stated in Ferguson v. State, 814 So.2d 925, 950
(Ala.Crim.App. 2000), aff'd, 814 So.2d 970 (Ala. 2001):
 "'Because we find that no single instance of the prosecutor's conduct was improper, any claim that the alleged improper conduct had a cumulative prejudicial effect on his trial is without merit and does not require a reversal.'"
Turner v. State, [Ms. CR-99-1568, November 22, 2002] ___ So.2d ___, ___ (Ala.Crim.App. 2002).
 II.
Wilson's third argument is that the trial judge allowed inadmissible evidence, which was prejudicial, to be presented. Specifically, Wilson argues 1) that the judge allowed several witnesses to testify that witnesses questioned after the shooting were uncooperative, 2) that the judge allowed the victim to testify as to hearsay, and 3) that the judge improperly sustained objections regarding his defense.
 A.
Wilson argues that an investigating officer should not have been permitted to testify about whether crime-scene witnesses were cooperative, because, he argues, the testimony was irrelevant.
"'Relevancy remains a question over which the trial court has wide discretion. Eason v. Comfort, 561 So.2d 1068 (Ala. 1990); Roberson v.Ammons, 477 So.2d 957 (Ala. 1985); Ott v. Fox, 362 So.2d 836 (Ala. 1978) (observing that the trial judge has great discretion concerning the relevancy of evidence).'" Peraita v. State, [Ms. CR-01-0289, May 30, 2003] ___ So.2d ___, ___ (Ala.Crim.App. 2003) (quoting Advisory Committee's Notes to Rule 401, Ala. R. Evid.). A trial court's ruling on a relevancy issue will not be overturned absent an abuse of discretion by the trial court. Id.
Relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence." Rule 401, Ala. R. Evid.
Wilson argues that the motive behind the line of questioning was to insinuate that he was coercing the community into not speaking with the police. However, the prosecutor's questioning was in response to a line of questioning by Wilson's codefendant that suggested that the police had not done a thorough job of investigating the incident. In allowing the officer to testify that the police had difficulty getting witnesses to cooperate, the trial judge correctly decided that such testimony was relevant to rebut that line of questioning. Therefore, the judge did not abuse his discretion in allowing the testimony to be presented.
 B.
Wilson also argues that the judge allowed inadmissible hearsay to be presented when the victim testified that his sister told him that "they [Wilson and his mother] had threatened her." (R. 102.) During the State's questioning of the victim, the following occurred:
 "[Prosecutor:] And did you pick somebody out of those photos? *Page 1166 
 "[Victim:] Yeah. The first time I picked Arrington out. I didn't pick the shooter out the first time.
"[Prosecutor:] Why is that?
"[Victim:] Because my sister had said he had —
"[Wilson's counsel:] Objection to what the sister said.
"[Arrington's counsel:] Objection.
"[Wilson's counsel:] Hearsay.
"The Court: That would be hearsay, wouldn't it, Mr. Felton?
 "[Prosecutor:] Your Honor, it only goes to — as we talked about in a previous hearing, it only goes to the victim's state of mind at the time as to why there was no identification.
 "The Court: I'm going to overrule the objection. Ladies and gentlemen, this is not necessarily offered for the truth of the matter, but to show or to explain the defendant's actions on this particular occasion. It's up to you to determine whether or not it actually in fact occurred."
(R. 100-01.)
Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 801(c), Ala.R.Evid.The trial judge was correct in ruling that the testimony was not hearsay. The victim's testimony was not used to prove that Wilson was threatening the victim or his family, but rather to show why the victim did not identify his shooters. "'[A] statement may be admissible where it is not offered to prove the truth of whatever facts might be stated, "but rather to establish the reason for action or conduct by the witness."'" Grayson v.State, 824 So.2d 804, 813 (Ala.Crim.App. 1999), quoting Edwards v.State, 502 So.2d 846, 849 (Ala.Crim.App. 1986), quoting in turn Tuckerv. State, 474 So.2d 131, 132 (Ala.Crim.App. 1984), rev'd on other grounds, 474 So.2d 134 (Ala. 1985).
The trial court did not err in allowing the victim to testify as to what his sister said. Because it was offered to explain the conduct of the victim, and not for the truth of the matter asserted, the testimony was proper. Therefore, the trial court judge did not err in allowing the testimony to be presented.
 C.
Wilson also alleges that the trial court judge improperly sustained a hearsay objection by the State when Wilson questioned Det. Hardiman as to whether "either of the three female eyewitnesses [could] identify Wilson?" (R. 296.)
The State's objection was properly sustained. The statement by Det. Hardiman would have been hearsay, as that term is defined in Rule 801(c), Ala.R.Evid.In other words, it was "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 801(c), Ala.R.Evid.Also, the essence of the sustained testimony was later allowed by the judge, without the hearsay constraints, in order to correct the discovery violation. Therefore, Wilson suffered no harm when the judge sustained the hearsay objection.
 D.
The trial court judge did not err in his rulings on the various matters raised by Wilson in his brief. Therefore, the judgment of the trial court is due to be affirmed.
 III.
In his fourth argument, Wilson alleges that the State presented insufficient evidence to sustain his conviction. *Page 1167 
 "'In reviewing a conviction based on circumstantial evidence, this court must view that evidence in a light most favorable to the prosecution. The test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude.'
 "Cumbo v. State, 368 So.2d 871, 874 (Ala.Cr.App.), cert. denied, 368 So.2d 877 (Ala. 1979), citing United States v. Black, 497 F.2d 1039 (5th Cir. 1974). Additionally, circumstantial evidence may form the proof of the corpus delicti; '"[i]f facts are presented from which a jury may reasonably infer that the crime has been committed, the question must be submitted to the jury."' Breeding v. State, 523 So.2d 496, 500 (Ala.Cr.App. 1987), quoting Suggs v. State, 403 So.2d 309, 313 (Ala.Cr.App. 1981)."
Woods v. State, 724 So.2d 40, 48 (Ala.Crim.App. 1997).
In the present case, there was adequate evidence from which a jury could render a guilty verdict. The victim identified Wilson and Arrington as the ones who robbed and shot him. He not only saw who shot him, but he also spoke with them before they shot him. Therefore, his recollection of the incident was very important for the trier of fact. Wilson was driving a car that matched the description of the one in which the assailants were described as driving. Wilson was in the neighborhood during a time that coincided with the incident. In fact, a witness told police at the scene of the incident that a car coming out of the alley was the one involved in the shooting. Wilson was driving the car, and subsequently the police stopped him.
The State also presented evidence indicating that Wilson's mother had been talking with witnesses and pressuring them to testify. Although this does not prove guilt, it is another factor that the jury could have used in deciding the outcome of the case.
Reviewing the facts of the case in a light most favorable to the prosecution, we conclude that there was sufficient evidence by which a jury could have convicted Wilson. The jury was presented with sufficient facts from which it could have excluded every inference but that of guilt.
Based upon the foregoing reasons, the judgment of the trial court is due to be, and hereby is, affirmed.
AFFIRMED.
McMILLAN, P.J., and BASCHAB, SHAW, and WISE, JJ., concur.
[1] Wilson's first trial ended in a mistrial.
[2] "B" and "Bouty Bouty" are names the three witnesses gave to police officers as the men who shot the victim.
[3] "Coon Dog" is Arrington's street name.